[Civ. No. 12884. Fourth Dist., Div. One. July 29, 1975.]

DONALD RAYMOND BUCHANAN, Plaintiff and Appellant, v. CITY OF NEWPORT BEACH, Defendant and Respondent.

## COUNSEL

Hurwitz & Hurwitz and Douglas S. Honig for Plaintiff and Appellant.

W. Mike McCray for Defendant and Respondent.

## Opinion

COUGHLIN, J.*—Plaintiff appeals from a judgment against him in favor of defendant, which was signed by the court, in a jury case based on an order granting defendant's motion for a "nonsuit" made after all parties had rested. The judgment decreed defendant "have judgment" against the plaintiff.[1]

Plaintiff was injured while surfing at a beach, on the oceanfront, called the Wedge, created by the construction of a jetty, dredging sand from the channel of the harbor entrance adjacent to the jetty, and depositing the dredged sand on what had been submerged sand spits, raising the beach level by 27 feet and causing a steep slope from the shoreline into the water. This man-made condition of the beach, plus the interaction of the ocean swells against the jetty, causing a condition described in the evidence as a "refraction" of the waves, at times produced a dangerous surfing condition. Plaintiff claims on August 14, 1966, the Wedge was under the control of defendant, the City of Newport Beach; the condition thereof was a dangerous condition; as a result of this condition he was injured on that date while body-surfing; and defendant is liable therefor under the provisions of Government Code section 835, because it had notice of the dangerous condition "a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

Although a discussion between court and counsel respecting the issue of ownership and control of the beach preceded defendant's statement of the grounds for its motion for nonsuit, the motion as made did not expressly include any deficiency in the evidence as to this issue. In his complaint plaintiff alleges defendant owned, leased, controlled and maintained the beach. The evidence establishes, on the date of the accident the beach was owned by the United States Government; later was leased to defendant for recreational purposes; and at the time of trial the city was occupying it under that lease. On appeal defendant raises the issue under a contention the federal government is an indispensable party to the action because it owned the beach, and the

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]We note the unusual procedure substituting a motion for nonsuit, order thereon, and judgment by the court, for a motion for a directed verdict, order granting such, verdict pursuant to the order and judgment by the clerk on the verdict. The procedure is treated as though a judgment of dismissal had been entered on a motion for nonsuit.

lease thereof to defendant was not made until after the accident occurred; and the trial court did not have jurisdiction in the premises. Plaintiff responds with the contention even though defendant did not own or lease the property at the time of the accident, it controlled the property and, under the principles stated and applied in *Low* v. *City of Sacramento,* 7 Cal.App.3d 826 [87 Cal.Rptr. 173], is liable.

The situation is not one involving an indispensable party under the rule stated in *Bowles* v. *Superior Court,* 44 Cal.2d 574, 583 [283 P.2d 704]. The injury plaintiff sustained was caused by defendant's failure to give warning of the dangerous condition, which is independent of any claim he might have against the federal government, and a judgment may be obtained against defendant "without inevitably affecting" the interest of the United States.

The true issue involved is whether the evidence would support a finding of control by the defendant.

In ruling upon a motion for nonsuit the court must accept as true any substantial evidence, including the inferences reasonably deducible therefrom, which would support findings in favor of the plaintiff (*Estate of Callahan,* 67 Cal.2d 609, 612 [63 Cal.Rptr. 277, 432 P.2d 965]; *Kirk* v. *Los Angeles Ry. Corp.,* 26 Cal.2d 833, 837-838 [161 P.2d 673, 164 A.L.R. 1]).

There is evidence the defendant controlled the beach, for a time caused a full-time lifeguard to be stationed there, employed the lifeguards who assisted defendant following his injury, posted a sign stating "No swimming between jetties," which was an area then owned by the federal government, posted a sign at the Wedge stating "No lifeguard on duty," and took council action, with attendant public meetings, on an ordinance to close the beach to swimmers, resulting in rejection of the ordinance. This evidence inferentially supports the conclusion defendant exercised control over the beach under the rule stated in *Low* v. *City of Sacramento, supra,* 7 Cal.App.3d 826.

The evidence shows as plaintiff was riding the surf, suddenly, as he approached the shore, he was thrust down into the sand by the action of the wave he was riding, breaking his neck. There is evidence supporting the conclusion this type of wave action is the product of the action of the waves against the jetty and the steep off-shore condition of the beach created by the deposit of dredged sand; characteristics of the wave action

in the area of the Wedge, before construction of the jetty and the deposit of dredged sand, were altered radically by the construction and deposit; the action of the "plunging" type of wave, such as that occurring after the change, differs from the "spilling" type in that when it breaks on a steep beach there is an abrupt transition in the course of which the top of the wave plunges from top to bottom instead of undergoing a gradual spilling effect.

There also is evidence supporting the conclusion the city had actual notice of the dangerous condition of the beach, but posted no warning signs respecting such even though it considered closing the beach to swimmers.

Defendant's motion for nonsuit was premised on the following statement: "[T]he City of Newport Beach . . . moves for judgment based upon its affirmative defense of 831.2 of the California Government Code . . ." which provides: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any . . . beach"; there were no improvements on the beach in question; the beach, the waves, the direction of the waves, and the type of waves that are normally hitting a beach will seek out their own profile within a short period of time; the evidence only shows the profile of the beach at the time the dredged sand was deposited there was different than it is now in that the waves broke farther back; the beach is unimproved; the deposit of dredged sand on the beach was not an improvement but a matter of distributing waste sand and clearing the navigable channel of the harbor, which was an improvement of navigational facilities and not an improvement of the beach.

In support of the motion defendant cited the decision in *Rendak* v. *State of California,* 18 Cal.App.3d 286 [95 Cal.Rptr. 665], applying Government Code section 831.2 to the facts in that case and upholding the decision of the lower court finding the immunity statute foreclosed liability of the state.

The trial court concluded, among other things, the evidence establishes as a matter of law the injury sustained by plaintiff was caused by a natural condition of unimproved public property for which defendant was not liable by virtue of Government Code section 831.2.

There is evidence supporting a conclusion the condition that caused plaintiff's injury was a known dangerous condition; was the product of

an improvement of property by governmental agencies, i.e., improvement of a harbor entrance and the creation of a larger beach area; was man-made; and was not a natural condition.

The alteration of the flow of the ocean, the wave action and the slope of the beach caused unnatural conditions. Whether, as claimed by defendant, these conditions by time and tide have become natural is a question of fact.

The court concluded the public property, the dangerous condition of which caused plaintiff's injury, was the beach; was unimproved because in constructing the jetty and depositing sand "all the City did . . . is to make more beach, more unimproved beach . . . didn't do anything to it except put it there"; and was in its natural condition because it is a "conglomerate of so many acres of grains of sand [which] will always be unimproved property from now until the end of the earth." Thus the court isolated the strip of beach where the accident happened as the public property the dangerous condition of which caused plaintiff's injury; determined this strip of property was unimproved and in its natural condition; and applied Government Code section 831.2 to these facts. The fallacy in this reasoning is that the property the dangerous condition of which caused plaintiff's injury is not only the strip of beach where he was thrust into the sand, but also the steep slope at the shore's edge of the beach created by the deposit of dredged sand on public property and the type of waves breaking on the beach created by the construction of the jetty on public property.

The decision in *Rendak* v. *State of California, supra,* 18 Cal.App.3d 286, did not concern facts analogous to the foregoing. An improvement of tidelands does not necessarily mean the building of structures thereon (*Allen* v. *McKay & Co.,* 120 Cal. 332, 338 [52 P. 828]). Defendant's contentions to the contrary disregard evidence which must be accepted in ruling upon a motion for nonsuit.

The court also concluded the evidence would not support a finding the improvement of the jetty caused the accident resulting in plaintiff's injury; the cause thereof "was the wave action off the jetty;" the issue of proximate cause is "the whole ball game" and "[t]here is no evidence that this plaintiff was affected by the Mach-stem, the backwash, the sidewash, the swash, the configuration of the waves, the peaking of the waves or any of the other conditions which we have spent two weeks listening about, on this wave on that day which in any way proximately

contributed to his injury." This view of the evidence again disregards testimony and inferences therefrom supporting the conclusion the wave plaintiff was riding at the time of the accident was of a type known as a "plunging" wave caused by the joint action of the change in the natural condition of the waves in the area by the jetty and the man-made steep slope at the shore's edge of the beach. Defense counsel referred to plunging waves in a different context and his argument premised thereon is without merit. The court rejected deducible inferences, placing them in the area of "speculation," and stated his version of the facts accordingly. At the court's suggestion defendant included in the grounds for its motion, the evidence is insufficient to warrant a finding plaintiff's injury was proximately caused by any defective condition of public property. We have considered the claimed insufficiency of the evidence to support the finding of proximate cause as a ground for the motion. Nevertheless, it is without merit.

It should be noted the beach adjoining the area where plaintiff was surfing and the area affected by wave action attributable to construction of the jetty, was not posted with signs warning body-surfers of the dangerous condition of the surf. The dangerous condition of property referred to in Government Code section 835 is defined as "a condition of property that creates a substantial . . . risk of injury when such property or *adjacent property* is used with due care in a manner in which it is reasonably foreseeable that it will be used" [italics ours] (Gov. Code, § 830). The principles stated and applied in *Holmes* v. *City of Oakland,* 260 Cal.App.2d 378, 389 [67 Cal.Rptr. 197], are applicable to the cause at bench (see also *Jordan* v. *City of Long Beach,* 17 Cal.App.3d 878 [95 Cal.Rptr. 246]).

■ Whether a condition is dangerous and whether the failure to warn of the danger is a proximate cause of injury primarily are questions of fact (*Norton* v. *City of Pomona,* 5 Cal.2d 54, 61 [53 P.2d 952]; *Bakity* v. *County of Riverside,* 12 Cal.App.3d 24, 36 [90 Cal.Rptr. 541]; *Granone* v. *County of Los Angeles,* 231 Cal.App.2d 629, 651 [42 Cal.Rptr. 34]; *McNeill* v. *A. Teichert & Son, Inc.,* 137 Cal.App.2d 5, 8 [289 P.2d 595]).

■ There is an abundance of evidence the Wedge is an exceedingly dangerous surfing area; more so than any other area; and became such after construction of the jetty and deposit of the dredged sand by the city, aided by the federal government. Premised on this evidence the city is liable for injury caused by this dangerous condition under the provisions of Government Code sections 835 and 830, applied pursuant to the

principles stated in *Warden* v. *City of Los Angeles,* 13 Cal.3d 297, 300 [118 Cal.Rptr. 487, 530 P.2d 175].

During argument on the motion the court expressed the belief plaintiff may have assumed the risk or was contributorily negligent. However, any conclusion in this regard does not appear to have been a ground for granting the motion. In any event the issues, under the evidence, were issues of fact and not of law.

For the reasons heretofore stated, we conclude there is evidence supporting plaintiff's cause of action premised on the existence of a dangerous condition of property under the control of defendant; a lack of any warning of this condition; and injury proximately resulting from the condition and the lack of warning. Also, the evidence does not establish as a matter of law recovery is foreclosed by Government Code section 831.2, by plaintiff's contributory negligence or under the doctrine of assumption of risk.

The judgment is reversed.

Brown (Gerald), P. J., and Ault, J., concurred.