[No. B014924. Second Dist., Div. Two. Mar. 6, 1986.]

ROBERT J. KUYKENDALL, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

COUNSEL

Bonelli, Heib, Fuchs & O'Neal, Bonelli, Heib, Fuchs, O'Neal & Kroll, Steven M. O'Neal and Stanley M. Sapiro for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Richard D. Martland and Marvin Goldsmith, Assistant Attorneys General, Nelson Kempsky, Robert H. Francis and Mark A. Weinstein, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**BEACH, J.**—Plaintiff appeals from a summary judgment in a personal-injury action in favor of defendant state. Affirmed.

BACKGROUND:

In March 1983, plaintiff suffered quadriplegic injuries when he swung from a rope hanging from a tree limb overhanging a canyon on public land,

lost his grip on the rope, and fell on his back. The area, known as Fryman Canyon and often referred to as the "rain forest," had been acquired by defendant in August 1981, and was at the time of the accident vacant, unimproved land.

Defendant moved for, and the trial court granted, summary judgment under Government Code section 831.2, which provides immunity from liability for injuries caused by "a natural condition of any unimproved public property." On appeal, plaintiff contends a rope tied to a tree limb is not a "natural condition" within the meaning of the immunity statute, and therefore summary judgment was improper.

## DISCUSSION

On a motion for summary judgment, issue finding, not issue determination, is the trial court's function. (*Wiler* v. *Firestone Tire & Rubber Co.* (1979) 95 Cal.App.3d 621, 625 [157 Cal.Rptr. 248]; *Axley* v. *Transamerica Title Ins. Co.* (1978) 88 Cal.App.3d 1, 8 [151 Cal.Rptr. 570].) ▮ Summary judgment is proper if the papers submitted by the moving party show there is no triable issue of any material fact. (Code Civ. Proc., § 437c.) Because summary judgment deprives the nonmoving party of the right to a trial, the moving party has the burden of furnishing supporting documents which establish that the claims of the adverse party are without merit on any legal theory. (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) "On appeal our review is limited to the facts shown in the documents presented to the trial judge in making our independent determination of their construction and effect as a matter of law." (*Bonus-Built, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 442 [186 Cal.Rptr. 357].)

▮ Government Code section 831.2 provides: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach." This statutory immunity is absolute. (*Milligan* v. *City of Laguna Beach* (1983) 34 Cal.3d 829, 834 [196 Cal.Rptr. 38, 670 P.2d 1121]; *Gonzales* v. *City of San Diego* (1982) 130 Cal.App.3d 882, 885 [182 Cal.Rptr. 73]; *Eben* v. *State of California* (1982) 130 Cal.App.3d 416, 421 [181 Cal.Rptr. 714].) In interpreting a statute, the controlling issue is the intent of the Legislature. (*Milligan* v. *City of Laguna Beach, supra,* at p. 831; *Hernandez* v. *Imperial Irr. Dist.* (1967) 248 Cal.App.2d 625, 626 [56 Cal.Rptr. 811]. The statute was enacted to relieve public entities of the burden and expense of putting natural areas in a safe condition and defending claims for injuries flowing from their use. (*Gonzales* v. *City of San Diego, supra,* at p. 886.)

In support of this argument that the grant of summary judgment in this case was improper, plaintiff cites *Gonzales* v. *City of San Diego, supra,* 130 Cal.App.3d 882. In that case, the city voluntarily provided lifeguard and police protection to a beach and surf area it owned. When the plaintiff entered the surf, a riptide condition existed. There were, however, no posted warnings and no lifeguard or police patrols, and the plaintiff drowned. The plaintiff's heirs sued the city for wrongful death, alleging negligent failure by the city to warn of the dangerous riptide. The trial court sustained the city's demurrer without leave to amend based on the city's assertion of absolute immunity under section 831.2. In reversing the ruling and holding the immunity statute inapplicable, the appellate court noted that the dangerous condition of the public property was the result of a hazardous, natural riptide condition combined with the city's voluntary assumption of the duty of providing lifeguard service and the city's negligence in performing that voluntarily assumed service by failing to warn swimmers of the known danger. (*Id.,* at pp. 884-885.)

*Gonzales* is distinguishable from the case before us. In *Gonzales,* the city was under no duty to provide any protective service. However, once it voluntarily chose to do so, it became subject to the same standard of care as a private individual or entity, namely, to perform its voluntary duties with ordinary care. The absence of warnings or lifeguard patrols in *Gonzales* therefore created a reasonable expectation of safety for potential swimmers. By contrast, in this case nothing in the record indicates defendant voluntarily assumed the obligation to warn the public of the dangers of tree-rope swinging, nor has plaintiff alleged he relied on any actions by defendant state in assuming he could safely swing from a rope some unknown third person had attached to a tree limb on defendant's vacant land.

Plaintiff argues that since the rope was "the result of human activity," his injuries were not caused by a "natural condition" within the meaning of the immunity statute, which therefore does not apply. The mere attachment of a rope on defendant's undeveloped land by an unknown third party did not change the "natural condition" of the land. Acceptance of plaintiff's argument would render the immunity statute meaningless since a person could simply enter any unimproved public land, change the natural condition of the land merely by attaching a rope to a tree limb, and then sue the public entity for injuries suffered in swinging from the rope. Imposing liability in such a situation would mean burdening the public entity with providing regular inspection of the area to remove ropes from tree branches. The expense incurred in providing such service and in defending claims for injuries could, in view of the limited funds available for the acquisition and improvement of property for recreational purposes, lead to the closing of such areas, a result not intended by the Legislature when it enacted the

immunity statute.[1] As stated in the Legislative Committee Comment (Senate) to section 831.2: "It is desirable to permit the members of the public to use public property in its natural condition and to provide trails for hikers and riders and roads for campers into the primitive regions of the State. But the burden and expense of putting such property in a safe condition and the expense of defending claims of injuries would probably cause many public entities to close such areas to public use. In view of the limited funds available for the acquisition and improvement of property for recreational purposes, it is not unreasonable to expect persons who voluntarily use unimproved property in its natural condition to assume the risk of injuries arising therefrom as a part of the price to be paid for benefits received."[2]

The judgment is affirmed.

Compton, Acting P. J., and Gates, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 21, 1986. Bird, C. J., was of the opinion that the petition should be granted.

---

[1] In January 1984, after the accident in this case, Government Code section 831.7 became effective, providing governmental immunity when a person engages in a "hazardous recreational activity" and suffers injuries as a result thereof. The statute lists tree-rope swinging as a hazardous recreational activity. In ruling on defendant's motion for summary judgment, the trial court specifically said it was basing its decision on section 831.2, not on section 831.7, which the court found to have only prospective application.

[2] Most ironically, at oral argument plaintiff's counsel seemingly with pride, advised us that a 10-foot-high wire fence has now been installed at each of the entrances to this sylvan glade, thereby effectively precluding its further enjoyment by all members of the public. In view of the tragic injuries the plaintiff himself sustained by reason of his ill-advised conduct, his personal desire to obtain monetary relief from any and all possible sources is certainly understandable. Nonetheless, if, notwithstanding the existence of so clear a statutory bar, the persistent filing of meritless lawsuits can so readily defeat the Legislature's laudable goal, the achievement is not one from which satisfaction should flow.