[No. B024385. Second Dist., Div. Six. Dec. 21, 1987.]

STEVEN DALE MERCER, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant, Cross-complainant and Respondent;
COUNTY OF SAN LUIS OBISPO, Cross-defendant and Respondent.

**COUNSEL**

Meyer & Mitchell, Herman C. Meyer and Dennis J. Thornton for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Marvin Goldsmith, Assistant Attorney General, Robert H. Francis and Joel A. Davis, Deputy Attorneys General, for Defendant, Cross-Complainant and Respondent.

Ernst & Mattison and Patricia Gomez for Cross defendant and Respondent.

**OPINION**

**STONE, P. J.**—Appellant/plaintiff Steven Dale Mercer challenges the dismissal of his personal injury lawsuit against respondent/defendant State of California following the granting of respondent's motion for summary judgment. The motion was made on the ground that the case fell within the purview of Government Code section 831.2, which immunizes public agencies from claims for injuries sustained on unimproved public lands. We affirm.

*Background*

Respondent owns and manages Pismo State Beach. The park's natural resources offer a variety of recreational activities including swimming, hiking, camping and off-road driving. The use of off-road vehicles is confined to one area of the park, called the Pismo Dunes State Vehicular Recreation Area, wherein are contained natural, "unstabilized" or "active" sand dunes. The dunes' configuration is constantly changed by ocean winds. Although their size and shape may vary from day to day or hour to hour, they are commonly characterized by a long sloping side facing the ocean with an opposite, steep "slipface" or "drop-off" side.

About 1:30 one morning, appellant entered the park with two friends. Each was riding a three-wheel all-terrain vehicle. The park is open for day and night use. A park ranger station located at the entrance point used by the men was unmanned. No sign warning of the slipface configuration of the dunes was posted at the ranger station or anywhere else inside the park. The only signs near the dunes area were posted on the beach about one-quarter of a mile away. One read "Sand Highway," a natural route of travel, and the other was a speed limit sign.

With the exception of a 30-minute to 1-hour ride earlier that night, appellant was a novice dune rider. He alleged that he was unaware the dunes could have steep sides.

After the men reached the dunes, appellant drove his vehicle up the sloping side of a dune, reached the crest, then fell 20 to 30 feet down the drop-off side to the dune's base. The fall crushed his spinal cord, causing permanent paralysis from the chest down.

Appellant's amended complaint for damages alleged that his injury was proximately caused by respondent's failure to warn him about the treacherous condition of the dunes. This allegation was contested by respondent's summary judgment motion, which claimed that the evidence showed appellant's suit was barred by Government Code section 831.2,[1] providing: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach."

Respondent argued that, since the evidence showed it had not conducted any improvement work within the vehicular recreation area which altered

---

[1] All statutory references hereinafter are to the Government Code unless otherwise specified.

the natural, physical characteristics of the dunes, the section 831.2 immunity applied. Any "improvements" it had conducted near to the accident site were located on the beach, not the dunes. These included the two signs posted one-quarter of a mile away from the dunes and a fence located three-quarters of a mile away to keep park visitors from driving into restricted areas.

Appellant contended in opposition that the governmental immunity did not apply because respondent had substantially improved the entire park by posting signs warning of dangerous surf conditions, setting speed limits, warning of environmentally sensitive areas and marking the beginning of Sand Highway, and by erecting fences. Appellant claimed these facts raised a triable issue as to whether or not the nature of respondent's improvements invoked governmental immunity.

Appellant also argued that the evidence showed respondent in essence waived the immunity provision by representing to the public that the dune vehicle area was safe for off-road vehicle use. The trial court took judicial notice of respondent's publication entitled "Pismo State Beach and Pismo Dunes State Vehicular Recreation Area, General Development Plan and Resource Management Plan" wherein respondent declared: "Pismo Dunes State Vehicular Recreation Area is established to make available to the people opportunities for recreational use of off-road vehicles in a large area of unstabilized sand dunes *exceptionally adapted* to this recreational activity; to regulate such uses in the interest of *visitor safety* and environmental protection; and to provide appropriate related facilities to serve the users of the area." (Italics added.) Appellant asserted that this statement, as well as the patrol of the park by state rangers and restrictions placed by respondent on the uses of different areas of the park, indicated respondent voluntarily assumed a protective duty toward park visitors, equivalent to the duty found by the appellate court in *Gonzales* v. *City of San Diego* (1982) 130 Cal.App.3d 882 [182 Cal.Rptr. 73]. Here, this duty was violated by respondent when it failed to warn off-road vehicle enthusiasts of the dangerous condition of the dunes. By being a lawful park visitor, appellant relied on respondent to warn of this danger.

In reply, respondent asserted it had undertaken no acts to protect the public which imposed upon it the legal duty to warn against the condition of the dunes and, in turn, which could have incurred any reliance by appellant.

DISCUSSION

Appellant contends the judgment should be reversed because the evidence reveals the following triable issues of fact: (1) whether respondent's

improvements on park lands transformed the park from unimproved to improved realty; (2) whether respondent assumed the duty to protect the safety of park visitors by holding out the vehicular recreation area as ideal for off-road vehicle operation; and (3) whether the vehicular recreation area constituted a substantial and known dangerous condition.

Summary judgment is proper if the papers submitted by the moving party show there is no triable issue of any material fact. (Code Civ. Proc., § 437c.) ■ Because summary judgment deprives the nonmoving party of the right to a trial, the moving party has the burden of conclusively establishing either that the claims of the adverse party are without merit on any legal theory or there is a complete defense. (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822]; *Kuykendall* v. *State of California* (1986) 178 Cal.App.3d 563, 565 [223 Cal.Rptr. 763].) ■ Appellate court review is limited to the facts shown in the documents presented to the trial judge in making an independent determination of their effect as a matter of law. (*Kuykendall* v. *State of California, supra.*)

As a general rule, a public entity is liable for injuries resulting from substantial, known dangerous conditions of its property. (§§ 830, subd. (a), 835.) An exception to this rule is section 831.2. It provides an absolute immunity for public entities against claims for injuries caused by natural conditions of all unimproved public property. (*McCauley* v. *City of San Diego* (1987) 190 Cal.App.3d 981, 986 [235 Cal.Rptr. 732].) ■ The statute was enacted to relieve public entities of the burden and expense of putting the state's natural lands in a safe condition and defending against personal injury lawsuits. The statute is thus designed to ensure that public agencies will not, because of financial expense, prohibit public access to and use of the state's natural recreational resources. (*Milligan* v. *City of Laguna Beach* (1983) 34 Cal.3d 829, 833, 835 [196 Cal.Rptr. 38, 670 P.2d 1121]; *McCauley* v. *City of San Diego, supra.*)[2]

■ We find, contrary to appellant's contention, that there is no triable issue of fact as to whether the vehicular recreation area of Pismo State Beach was in an improved condition at the time of the accident.

---

[2] The Legislative Committee Comment to section 831.2 reads: "This section provides an absolute immunity from liability for injuries resulting from a natural condition of any unimproved public property. . . . [¶] . . . It is desirable to permit the members of the public to use public property in its natural condition and to provide trails for hikers and riders and roads for campers into the primitive regions of the State. But the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use. In view of the limited funds available for the acquisition and improvement of property for recreational purposes, it is not unreasonable to expect persons who voluntarily use unimproved public property in its natural condition to assume the risk of injuries arising therefrom as a part of the price to be paid for benefits received."

■  Although the scope of section 831.2 is not made clear by its language, it appears that to qualify public property as improved, so as to take it outside the natural condition immunity, the improvements must change the physical nature or characteristics of the property at the location of the injury to the extent that it can no longer be considered in a natural condition. (See *Eben* v. *State of California* (1982) 130 Cal.App.3d 416, 421, 423 [181 Cal.Rptr. 714].) To illustrate, in *Buchanan* v. *City of Newport Beach* (1975) 50 Cal.App.3d 221 [123 Cal.Rptr. 338], the appellate court held that the defendant city's creation of a larger beach area was an improvement subjecting the city to possible liability. The dredged sand deposited as a result had dangerously altered the slope of the beach and the ocean's wave action. The improvement had thus created a condition which did not occur naturally. (Pp. 226-227.)

Not only must improvements change the physical characteristics of property to avoid the immunity; they must do so at the location of the injury. (*Eben* v. *State of California, supra,* 130 Cal.App.3d 416.) Thus, improvements of a portion of a public park do not remove the immunity from the unimproved areas. (*Id.,* p. 422; *Rendak* v. *State of California* (1971) 18 Cal.App.3d 286, 288 [95 Cal.Rptr. 665].) The reasonableness of this rule is apparent. Otherwise, the immunity as to an entire park area improved in any way would be demolished. (*Ibid.*) This would, in turn, seriously thwart accessibility and enjoyment of public lands by discouraging the construction of such improvements as restrooms, fire rings, campsites, entrance gates, parking areas and maintenance buildings.[3]

■  Here, there was no evidence of any alteration in the natural condition of the dunes in the vehicular recreation area. It was undisputed that respondent had not conducted any improvement work in the dunes area. None of the "improvements" urged by appellant to remove the immunity— signs setting speed limits, warning of surf conditions and marking access roads, and fences and signs prohibiting entry into environmentally sensitive or nonpublic areas—were erected within or near the dunes area. The dunes were not therefore transformed into improved property. Further, there was no evidence even suggesting that these so-called improvements had any causal connection with appellant's accident. (See *Eben* v. *State of California, supra,* 130 Cal.App.3d 423, 425.)

Additionally, the fences and signs protecting nonpublic property promoted the beneficial use of park lands and thereby contributed to the preservation and public enjoyment of natural resources. The speed limit and surf condition signs advanced the important state goal of protecting the public's

---

[3] Park roads and trails are specifically covered by section 831.4.

safety. A ruling in favor of appellant on this issue would thus both defeat the purpose of section 831.2 and violate public policy.

■ The next issue, whether the evidence showed respondent assumed the duty to protect the safety of park visitors, must also be resolved in respondent's favor.

According to appellant, respondent is liable for failing to warn him of the alleged hidden dangerous condition of the dunes, their slipfaces. This failure to warn allegedly arose as the result of respondent's voluntary assumption of the duty to protect the safety of park visitors. Appellant relies on *Gonzales* v. *City of San Diego, supra,* 130 Cal.App.3d 882, in so arguing.

Before determining the applicability of *Gonzales,* we point out that no provision in the statutory scheme relating to public entity liability explicitly immunizes a public defendant for failure to warn. (*Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 815 [205 Cal.Rptr. 842, 685 P.2d 1193].) ■ Nevertheless, we hold that the failure to warn issue involves the same basic policy considerations which led to the enactment of section 831.2. (See *ibid.*) Therefore, liability for failure to warn is inconsonant with the immunity the statute provides. The immunity applies whether or not the dangerous condition amounted to a hidden trap and whether or not the public entity had knowledge of it. (*McCauley* v. *City of San Diego, supra,* 190 Cal.App.3d at p. 992;[4] *Winterburn* v. *City of Pomona* (1986) 186 Cal.App.3d 878, 882 [231 Cal.Rptr. 105].)

The appellate court in *Gonzales* v. *City of San Diego, supra,* 130 Cal.App.3d 882, enunciated an exception to the rule of absolute immunity under section 831.2. The issue in the case was whether plaintiffs pled a cause of action against defendant city for the drowning death of their mother by negligently failing to warn of a dangerous riptide condition. The city asserted absolute immunity under section 831.2. The court of appeal

---

[4] "[T]he legislative history preceding the enactment of section 831.2 reveals the Law Revision Commission recommended not only limiting immunity to injuries caused by natural conditions of bodies of water and water courses sustained by individuals using the property for purposes not intended by the public entity, but also permitting liability for natural conditions on these properties where they amounted to a hidden trap known to the entity. After the Senate expanded the immunity to cover natural conditions of 'any unimproved public property,' it rejected these two qualifications on immunity leaving the provision in its current form. [Citation.] Consequently, the Legislature intended to provide immunity where the public entity had knowledge of a dangerous condition which amounted to a hidden trap. A fortiori, they intended to provide immunity where the natural condition was not latent, but patent, in character. Consequently, a duty to warn of a known dangerous, purely natural condition is inconsistent with the absolute immunity provided by section 831.2."

ruled that plaintiffs prevailed since the city had voluntarily provided a lifeguard service at the beach it owned and controlled where the death occurred. As such, plaintiffs alleged a "hybrid" dangerous condition, partially natural and partially artificial in character, resulting from the combination of a natural dangerous riptide condition and the voluntary lifeguard service which induced public reliance on its offered protection. (Pp. 885-887, 889.)

*Gonzales* thus established the rule that where a public entity voluntarily provides a protective service for certain members of the public, and thus induces their reliance on the nonnegligent performance of that service, the public entity will not be shielded from liability by section 831.2 if it negligently performs the voluntarily assumed protective service. (*Ibid.*; *McCauley* v. *City of San Diego, supra,* 190 Cal.App.3d at pp. 987-988.) Put another way, the immunity is inapplicable where a public entity's conduct actively and negligently increases the degree of danger posed by a natural condition. (*McCauley* v. *City of San Diego, supra,* p. 989, fn. 7.)

Although appellant, like the plaintiffs in *Gonzales,* alleged that his injury was proximately caused by the failure to warn of the dangerous condition rather than by the condition itself, the *Gonzales* rule is not applicable because the facts of that case are entirely distinguishable from the present one. *Gonzales* was decided on extremely narrow factual grounds utilizing ordinary negligence principles.

Appellant contends that the facts of *Gonzales* are analogous to our case since the precipitous nature of the dunes, coupled with respondent's failure to warn of this condition, created a hybrid dangerous condition which removed the section 831.2 immunity. Not so. Under *Gonzales,* a public entity has no duty to warn of dangerous natural conditions unless it voluntarily assumes a protective duty toward the public. The facts presented by appellant on this issue—the ranger services, the restriction of park uses, and the Pismo State Beach publication—do not tend to show that respondent voluntarily assumed the duty to protect park users. Therefore, no duty to warn follows.

We have already decided that the restriction of park uses by various signs and fences did not remove the section 831.2 immunity, not only as a matter of law, but as a matter of public policy. Appellant objects to the presence of these fixtures as incurring his reliance on the safety of the dunes, yet these same things promote the safety of users of the park as well as the preservation of park lands. Appellant thus asks us to denounce respondent's legitimate and necessary conduct in making the park available for public use.

Regarding the ranger services, *Gonzales* itself observed the difference in function between lifeguard services and the duties of a county ranger in another section 831.2 case, *Sacramento* v. *Superior Court* (1979) 89 Cal.App.3d 215 [152 Cal.Rptr. 391], which consisted of the control of the conduct and activities of persons on public property. (130 Cal.App.3d at p. 886.) The duties of rangers at Pismo State Beach described by respondent in its moving papers—the supervision of park uses—are identical to the aforementioned ones. Appellant presented no contrary evidence even suggesting that Pismo State Beach park rangers were ordered by respondent, or otherwise personally assumed the obligation, to protect people in addition to their job of protecting property.

Furthermore, the critical evidence of appellant's reliance on the ranger services is absent. Appellant entered the park at night, apparently with the knowledge that the ranger station was unmanned. The role of reliance in *Gonzales* is crucial, for without it, the defendant city's conduct in that case would not have been an alleged cause of the decedent's death. (*McCauley* v. *City of San Diego, supra,* 190 Cal.App.3d at p. 989.)

Evidence of reliance by appellant on respondent's Pismo State Beach publication also cannot be discerned from the record. There is no indication that appellant saw, had knowledge of, or relied on the publication in any manner prior to his accident. Therefore, no evidentiary foundation exists upon which to conclude that respondent's conduct with regard to the publication was of the character inducing reasonable public reliance. Assuming there was evidence of such reliance, it would not constitute grounds for reversal of the summary judgment. We find nothing irregular in encouraging the public's use of public property. Such use was, after all, the legislative motive behind the enactment of section 831.2.

■ Appellant suggests an additional argument on appeal that respondent may be liable to him for failing to close the vehicular recreation area at night. This contention has no merit. Where respondent cannot be held responsible for failing to warn of the natural condition of the dunes, it is illogical to hold that it waived its right to the section 831.2 immunity at night. (See *McCauley* v. *City of San Diego, supra,* 190 Cal.App.3d 981.)

■ Appellant also makes the bare assertion that the immunity does not apply to a cause of action based on a public entity's failure to warn. He points out that he specifically alleged the cause of injury was, not the natural condition of the dunes, but respondent's failure to warn. This argument is unavailing.

The legal sufficiency of appellant's complaint was not the focus of the proceedings in the trial court. A summary judgment motion tests the

adequacy of the evidence in relation to the allegations raised by the pleadings. (Code Civ. Proc., § 437c.) Hence, appellant's assertion that his complaint may have been well pled has no significance in reviewing the propriety of the trial court's ruling.

Secondly, appellant appears to misunderstand the law surrounding the natural condition immunity. Section 831.2 does not abolish actions based on a breach of duty undertaken by a public entity. The holding in *Gonzales* was based on ordinary negligence principles and therefore did not dilute the impact of section 831.2. As the *Gonzales* court wrote, the statute frees a public entity of the duty of providing any protective service. (130 Cal.App.3d at p. 886.) But, the statutory immunity becomes moot once a public entity provides any protective service and thereafter negligently performs that voluntarily assumed service. (*Id.,* pp. 886-887.) Liability may thus be based on the failure of a public entity to perform its voluntary duties with ordinary care. (*Id.,* p. 887; *Kuykendall* v. *State of California, supra,* 178 Cal.App.3d at p. 566.)

Nothing in the record indicates respondent voluntarily assumed the obligation to warn the public of the dangers of using off-road vehicles in the dunes recreation area, or otherwise by its conduct negligently increased the dangerousness of the dunes' natural condition. Nor has appellant offered any evidence that he was misled or given a false sense of security by respondent's conduct. Appellant's contention, that he was entitled as a user of the park to rely on a safe recreational area, is exactly the type of complaint section 831.2 was designed to protect public entities against.

Appellant's final contention, that a triable issue of fact concerning the dangerous condition of the dunes was presented by his opposition papers, is a moot question. While the section 831.2 immunity is an exception to the general rule that a public entity is liable for injuries resulting from hazardous conditions of its property and courts should not therefore casually decree governmental immunity (*Johnson* v. *State of California* (1968) 69 Cal.2d 782, 798 [73 Cal.Rptr. 240, 447 P.2d 352]), addressing the dangerous condition issue in this case would be an exercise in futility. A ruling that appellant was entitled to litigate the alleged dangerous condition issue would serve no legal purpose, since respondent conclusively established in the trial court that it had a complete defense to appellant's suit. The property upon which appellant was injured was natural, unimproved public land. (See § 831.2.) As such, appellant assumed the risk of injury in exchange for his ability to use the property for recreational purposes.

Nonetheless, we feel compelled in concluding our discussion to note that the facts of this case present an ideal opportunity for respondent to further

promote the important state goal of protecting the public's safety without compromising its section 831.2 immunity. The natural condition which led to appellant's injury was confined to a limited geographical area of Pismo State Beach park, and has resulted in other injuries similarly serious within the same area. Thus, respondent's contention that an inspection system or warning signs on particular dunes would be impractical due to the continually shifting nature of the dunes is fallacious.

Public policy would support signs erected by respondent warning of the natural condition of the dunes at Pismo State Beach which would constitute neither an improvement nor a voluntary assumption of a public protection service removing immunity. (See *McCauley* v. *City of San Diego, supra,* 190 Cal.App.3d at p. 990.) We highly approve of the following language in *McCauley, supra*: "[W]e believe public policy is promoted by the minimally burdensome and passive intervention of sign placement so long as the public entity's conduct does not amount to negligence in creating or exacerbating the degree of danger normally associated with a natural condition. Consequently, we believe it fosters the legislative purpose of section 831.2 to allow public entities to post warnings of purely natural dangerous conditions on unimproved public property, without jeopardizing their section 831.2 immunity. A warning-signage program which does not contribute to the dangerousness of a natural condition constitutes a reasonable middle approach for a public entity to pursue, guaranteeing the retention of the cloak of immunity while promoting public safety by encouraging the governmental entity to warn the using public of the existence of known dangerous natural conditions." (*Id.,* pp. 990-991.)

The judgment is affirmed.

Gilbert, J., and Abbe, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 16, 1988.