52 F.3d 332
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Elizabeth M. BUECHE, Incapacitated, person, By and Through
her conservator, Kristine L. BUECHE, Plaintiff-Appellant,
v.
SANTA CRUZ SEASIDE, COMPANY, INC., City of Santa Cruz,
Defendants-Appellees.
 No. 93-15795.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 15, 1994.
Decided April 17, 1995.
 
 Before: LAY*, PREGERSON and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Kristine Bueche, the appointed conservator for Elizabeth Bueche, brought this action against the City of Santa Cruz ("the City") and Santa Cruz Seaside Company for permanent injuries suffered by Elizabeth while she was crossing a river that emptied into the ocean on one of the City's beaches.[1] The district court submitted the claims brought against the City to the jury. The jury returned a verdict in favor of the City, and the district court entered judgment on the verdict. On appeal, Bueche challenges several of the jury instructions as erroneous. Finding no prejudicial error, we affirm.
 
 BACKGROUND
 
 3
 Santa Cruz Beach, San Lorenzo Point, and the area of the mouth of the San Lorenzo River ("the river") are under the City's jurisdiction. The river flows through the City before forming a lagoon behind a sandbar or emptying into the ocean. In 1958, the Army Corps of Engineers constructed flood control levees along the river in the City's downtown area. Downcoast from the river's mouth is Seabright State Beach and Santa Cruz Yacht Harbor. The harbor, which is protected by two jetties running perpendicular to the shore, was built by the City in 1962.
 
 
 4
 On May 24, 1989, Elizabeth Bueche was sitting on the southern edge of the Santa Cruz Beach near the mouth of the river and San Lorenzo Point. The river was in the process of breaching a large sandbar which had built up in its path on the beach. At approximately noon, the river's flow through the breach was gathering force rapidly. Bueche and a companion attempted to cross the river where it flowed over the beach. Both were caught in the torrent of water and swept into the rip current of Monterey Bay. Bueche, after almost drowning, suffered severe injuries from brain anoxia (lack of oxygen). The resultant brain damage left her unable to walk or stand and has impaired her reasoning capacity and memory.
 
 
 5
 A jury trial was held before a magistrate judge on November 17, 1992. Bueche presented negligence theories under two sections of the California Government Code: Section 835,[2] alleging a dangerous condition on public property, and Section 815.2,[3] which creates municipal liability based upon an act or omission of an employee acting within the scope of employment. At trial, Bueche claimed that the City's flood control project and other alterations to the river and shoreline caused the unnatural buildup of sand at the mouth of the river and the development of a deep and voluminous lagoon behind the sandbar, producing an unnaturally dangerous torrent once the sandbar breached. The City offered evidence that this type of blockage, lagoon, and resultant torrent are natural conditions common to this and other river mouths along the central California coastline. Bueche also presented evidence that the City undertook a program to monitor the sandbar and lagoon, and to create a controlled breach of the sandbar once the lagoon attained a certain level. Bueche further attempted to establish that a shovel-wide trench carved through the sandbar on the day of Bueche's injury was dug by the City employee as part of this program. The City disputed this contention, claiming there was no evidence that the trench was dug by a City employee. Neither party disputes that on the day of Bueche's injury, the torrent was a dangerous condition.
 
 
 6
 On December 10, the jury reached a special verdict, finding the situation at the mouth of the river was a natural condition, and thereby making the City immune under California Government Code Section 831.2[4] from liability under Bueche's first theory. In addition, the jury found no City employee owed a duty to protect Bueche from this danger, defeating her second claim. Accordingly, the magistrate judge entered judgment in favor of the City. Bueche now appeals, claiming the judgment should be overturned because portions of the magistrate judge's jury instructions were erroneous.
 
 DISCUSSION
 I.
 
 7
 Bueche initially contends the magistrate gave the jury an improper instruction for evaluating the natural or unnatural status of the at-issue public property under section 831.2. Although she concedes a proper finding of a "natural condition" under section 831.2 would preclude recovery under her first theory, Bueche claims the magistrate judge erred in instructing the jury how to make this finding. Initially, she argues that the trial court erred by instructing the jury that the "interaction between the flow of a river and the tides of the ocean including the movement of sand and the creation of sandbars is a natural condition." She contends this language erroneously informs the jury that the interaction between the river flow and the ocean is always a natural condition. She insists the cases the magistrate judge cited in support of the jury instruction do not stand for the proposition that the interaction of the ocean and river flow is natural, as a matter of law, regardless of human alterations and effects.[5] By using this instruction, Bueche reasons, the court eliminated significant expert testimony offered at trial that this interaction was not natural, and thus, essentially directed a verdict in favor of the City on this issue.[6]
 
 
 8
 Second, Bueche argues the court erred in instructing the jury as follows:
 
 
 9
 A combination of natural and human forces particularly where it produces over a long period of time, a condition similar to those which occur in nature, is a natural condition.
 
 
 10
 On the other hand, if manmade artificial conditions have a material and dramatic effect on the forces present at the site of the accident, the condition is not natural.
 
 
 11
 She urges that using the words "material and dramatic effect" went beyond what California courts require to classify a condition as unnatural due to human alteration. She admits courts require a "material" effect, but she contends the magistrate's undefined articulation seems to create a heightened, two-pronged test. In addition, Bueche asserts that because the natural condition immunity instruction includes details about what specifically constitutes a natural condition, but leaves to one paragraph the test for finding an artificial condition, the instruction is argumentative. Thus, she argues the instruction as a whole constitutes reversible error because it overemphasizes natural conditions by making them unduly prominent. Finally, she insists the trial court erred in refusing to include her submitted instruction that natural condition immunity is not available if the City actively exacerbates the danger posed by a natural condition. She claims she was factually entitled to this instruction because she produced evidence from which the jury could have concluded the City's alterations to the river's flow and its digging a ditch into the sandbar exacerbated the danger of the torrent.[7]
 
 
 12
 We agree with Bueche that the "interaction" portion of the instruction left little room for the jury to find the conditions at the mouth of the river were unnatural. Nevertheless, we reject this and Bueche's other challenges to the immunity instruction because we find Bueche was not prejudiced.
 
 
 13
 We conclude the court should have rejected, as a matter of law, the portion of Bueche's claim that relies on evidence of human improvements and alterations in other areas of the City. California case law clearly holds that the buildup of sand along a beach is a natural condition whether or not there is increased deposition caused by off-site improvements. See, e.g., Tessier, 268 Cal.Rptr. at 236; Morin, 263 Cal.Rptr. at 481-82; see also Geffen v. County of Los Angeles, 242 Cal.Rptr. 492, 496 (Cal.Ct.App.1987) (concluding alterations to bays and river mouths that have affected the conditions along the California coastline do not exclude these areas from immunity under section 831.2). Human alterations must have occurred and changed the physical nature of the property at the location of the injury to abrogate the natural condition immunity. See, e.g., Tessier, 268 Cal.Rptr. at 236 (finding no municipal liability because the human alterations that may have affected the beach were not at the location of the injury); Morin, 263 Cal.Rptr. at 482 (holding underwater sand buildup on a beach was a natural condition absent human alterations at the accident site); Mercer v. State, 242 Cal.Rptr. 701, 705 (Cal.Ct.App.1987) ("Not only must improvements change the physical character of the property ... they must do so at the location of the injury."); Sacramento, 152 Cal.Rptr. at 393 (stating the flow of water is a natural condition even if affected by an upstream dam). Morin 's analysis, addressing the underwater buildup of sand along a public beach, exemplifies this principle:
 
 
 14
 [T]he record in this case contains no evidence of any improvements or unnatural physical change " '... in the condition of the property at the location of the injury, which justifies the conclusion that the public entity is responsible for reasonable risk management in that area....' " The Venice pier, jetties, rock groins, and reef did not physically alter the accident site in this case, which was some distance away.... Moreover, even if we were to assume these improvements and the forces of nature added to the buildup of sand at the accident site, section 831.2 still applies.
 
 
 15
 263 Cal.Rptr. at 482 (citations omitted). Thus, even if the harbor jetty and river improvements increased the buildup of sand and the level of the lagoon behind the sandbar,[8] the resultant torrent was a natural condition as a matter of California law, absent evidence of some on-site human alteration. Bueche was therefore not entitled to have the jury determine whether the City's off-site improvements somehow contributed to Bueche's accident.[9]
 
 
 16
 Bueche also contends on appeal, however, that there was an on-site human alteration in this case; namely, a city employee dug a trench through the sandbar. She argues that the City "actively increased the dangerousness of the condition by weakening the sandbar wall so as to cause the torrent...." Appellant's Br. at 22. While such an on-site alteration by a City employee could result in an unnatural breach and thereby abrogate the City's immunity, the jury ultimately concluded no such action by the City occurred. The court's instruction on Bueche's second claim, which will be discussed in detail in Section II of this disposition, essentially directed the jury to determine whether a City employee dug the trench. This "voluntary assumption of duty" instruction stated in relevant part:
 
 
 17
 If you find that a City employee acting within the scope of his employment caused an unnatural breach of the river or lagoon through the sandbar at the mouth of the San Lorenzo River, then you must find that the City had a duty to warn the Plaintiff of the danger.
 
 
 18
 On the other hand, if you find that the breach of the river through the sandbar was natural or was not caused by an employee of the City acting within the scope of his employment, then you mist find that the City had no duty to warn.
 
 
 19
 The jury returned a special verdict finding no duty to warn, and therefore it must have concluded that the breach was not caused by a City employee. Regardless of whether this instruction was otherwise erroneous as it related to the law of voluntary assumption of duty, it is clear that the jury determined the City did not cause the breach or exacerbate the hazards created by the conditions on the beach.[10] Thus, we reject Bueche's claim that, given the proper immunity instruction, the jury may have found the City "actively increased the danger" at the site of the accident. We find that Bueche was not prejudiced by any of the court's instructions. We therefore affirm the judgment of the trial court on the issue of natural condition immunity.
 
 II.
 
 20
 Bueche claims the trial court erred in instructing as to the City's voluntary assumption of duty.[11] The court's instruction provided in relevant part:
 
 
 21
 Now, you heard the first element I mentioned relates to duty. The City has no duty to warn of dangerous natural conditions unless it voluntarily assumes a protective duty toward the public and the public relies on such an assumption of duty; or unless a public employee created the danger, created a foreseeable peril not readily discoverable by endangered persons.
 
 
 22
 If you find that a City employee acting within the scope of his employment caused an unnatural breach of the river or lagoon through the sandbar at the mouth of the San Lorenzo River, then you must find that the City had a duty to warn the Plaintiff of the danger.
 
 
 23
 On the other hand, if you find that the breach of the river through the sandbar was natural or was not caused by an employee of the City acting within the scope of his employment, then you must find that the City had no duty to warn.
 
 
 24
 The main thrust of Bueche's argument is that the court failed to inform the jury that if a City employee's actions created an "increased risk of harm" to Bueche, the City had a duty to act with due care towards her. She points out that, under California law, a government entity assumes a duty to exercise reasonable care, if its actions increase the risk of harm to another. See, e.g., Williams v. State, 192 Cal.Rptr. 233, 235 (1983). Bueche also contends she produced sufficient testimonial evidence of the City's flood control practices and its incentive and actual attempt to bring about a breach in the sandbar to entitle her to an "increased risk of harm" instruction.
 
 
 25
 In addition, Bueche asserts the court's use of the phrase "creating a peril" was misleading because "the peril" would be assumed to mean the sandbar or the blocked river. The real issue she suggests, was whether the voluntary acts of the City exacerbated the peril and increased the risk the sandbar and river posed to Bueche. Bueche also argues the phrase "not readily discoverable by endangered persons" misled the jury into believing that some negligence on her part barred recovery, which is contrary to California law. Finally, Bueche claims the inclusion of the words "natural" and "unnatural" was erroneous because these terms were unnecessary in this context and served only to mislead the jury into thinking the assumption of duty issue was somehow interrelated to the natural condition immunity defense.
 
 
 26
 We agree with Bueche that the language in the first paragraph of the instruction, taken alone, misstated California law. Rather than instructing the jury that a City employee must have "created the danger" or caused a "foreseeable peril," the court should have used the "increased risk of harm" test outlined in Williams. See 192 Cal.Rptr. at 235; see also Mercer, 242 Cal.Rptr. at 706 (using the "increases the degree of danger" language in the natural condition context). Nevertheless, we find that the instruction, taken as a whole, did not prejudice Bueche. Specifically, because Bueche's claim ultimately must rest on her allegation that a City employee dug the trench that breached the sandbar, and the last two paragraphs of the court's instruction directed the jury with sufficient clarity to make such a determination, we find the issue was adequately resolved.
 
 
 27
 As we have previously discussed, under California law the City is immune from suit if Bueche's injuries were caused by natural conditions unaltered (at the site of the accident) by the City or its employees. Natural condition immunity may not bar recovery, however, if the City voluntarily assumed the responsibility to manage the risk posed by the natural condition(s). See, e.g., Mercer, 242 Cal.Rptr. at 706, 707; Geffen, 242 Cal.Rptr. at 495; McCauley v. City of San Diego, 235 Cal.Rptr. 732, 735 (Cal.Ct.App.1987). Once the City undertakes such a responsibility, it is "under a duty to exercise due care in performance and is liable if (a) [its] failure to exercise such care increases the risk of harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." Westbrooks v. State, 219 Cal.Rptr. 674, 677 (Cal.Ct.App.1983) (citing Williams, 192 Cal.Rptr. at 235). In other words, "the immunity is inapplicable where a public entity's conduct actively and negligently increases the degree of danger posed by a natural condition." Mercer, 242 Cal.Rptr. at 706; Geffen, 242 Cal.Rptr. at 495; see McCauley, 235 Cal.Rptr. at 735.
 
 
 28
 As we have also discussed, the City is immune from liability for off-site improvements to the coast and river, and cannot be held liable for injuries resulting from a natural breach of the sandbar. Bueche presented evidence, however, that the City undertook an on-site program to manage the risk posed by this natural condition. This conduct exposes the City to liability only if an employee implementing this program "increased the risk of harm" from this natural condition, or Bueche somehow relied upon the City's undertaking. Because there is no evidence in the record of Bueche's reliance on the City's maintenance program, she necessarily bases her claim on a City employee's actively increasing the risk of harm by carving a trench through the sandbar with a shovel, which created the breach that caused the dangerous torrent. Thus, Bueche's voluntary assumption of duty claim turns on whether a City employee breached the sandbar.
 
 
 29
 As we discussed in the previous section, we find that the last two paragraphs of the instruction required the jury to determine whether a City employee breached the sandbar. The court presented to the jury the unambiguous and unavoidable task of determining whether a City employee assumed a duty by causing the breach. In addition, we hold the court's inclusion of the words "unnatural" and "natural" did not constitute reversible error. Contrary to Bueche's contention, the meaning of these two paragraphs was plain, the jury's task was not confusing, and these words were therefore "more probably harmless than not."[12] Once given this instruction the jury found that the City had no duty; hence, that the breach was not caused by a City employee.[13] Because this finding ultimately would have defeated Bueche's claim, any error contained in the remainder of the instruction were not prejudicial.
 
 
 30
 Furthermore, we point out that Bueche's suggestion that the City should have at least warned people of the dangerous nature of the torrent is also defeated by the jury's finding. A government entity has no duty to warn the public of even known dangers associated with natural conditions. See, e.g., Morin, 263 Cal.Rptr. at 485; Mercer, 242 Cal.Rptr. at 707. The presence (or absence) of some warning signs in the area cannot alone abrogate the entity's immunity. See Morin, 263 Cal.Rptr. at 485; City of Santa Cruz v. Superior Court, 244 Cal.Rptr. 105, 109 (Cal.Ct.App.1988); Mercer, 242 Cal.Rptr. at 708; McCauley, 235 Cal.Rptr. at 738; see also Cal.Gov't Code Sec. 831.21 (stating public beaches shall be deemed natural conditions notwithstanding the provision of lifeguards and signs). Rather, a duty to warn arises only if the defendant "actively increased" the degree of dangerousness of the natural condition. Morin, 263 Cal.Rptr. at 485; see Mercer, 242 Cal.Rptr. at 706; McCauley, 235 Cal.Rptr. at 738.[14] Again, because the sandbar and lagoon were natural conditions as a matter of law, and the jury found that the breach was not caused by a City employee, the City did not increase the risk associated with the breach. Thus, it assumed no duty to warn Bueche of the dangers associated with the breach and torrent.
 
 
 31
 For the foregoing reasons, we find the district court's instructions did not prejudice Bueche. We therefore affirm the court's judgment.
 
 
 32
 AFFIRMED.
 
 
 
 *
 Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The district court granted summary judgment in favor of Seaside, finding there was not sufficient evidence to allow a reasonable trier of fact to conclude Seaside was negligent. No appeal was taken from that judgment
 
 
 [2]
 Cal.Gov't Code Sec. 835 reads as follows:
 Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
 (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
 (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
 
 
 [3]
 Cal.Gov't Code Sec. 815.2 provides in pertinent part:
 (a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or the omission would, as apart from this section, have given rise to a cause of action against that employee or his personal representative.
 
 
 [4]
 Cal.Gov't Code Sec. 831.2 establishes immunity from liability as follows:
 Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach.
 This provision is further defined by Cal.Gov't Code Sec. 831.21:
 Public beaches shall be deemed to be in a natural condition and unimproved notwithstanding the provision or absence of public safety services such as lifeguards, police or sheriff's patrols, medical services, fire protection services, beach cleanup services, or signs.
 
 
 [5]
 The court cited four California cases as authority for this instruction: Knight v. City of Capitola, 6 Cal.Rptr.2d 874 (Cal.Ct.App.1992); Tessier v. City of Newport Beach, 268 Cal.Rptr. 233 (Cal.Ct.App.1990); Morin v. County of Los Angeles, 263 Cal.Rptr. 479 (Cal.Ct.App.1989); County of Sacramento v. Superior Court, 152 Cal.Rptr. 391 (Cal.Ct.App.1979). Bueche also relies on Buchanan v. City of Newport Beach, 123 Cal.Rptr. 338, 341 (Cal.Ct.App.1975) which stated that whether human alterations of the flow of waves and the ocean's interaction with the shore caused unnatural beach conditions is a question of fact
 
 
 [6]
 Both parties offered expert and other evidence at trial supporting their theory of whether or not the beach and river conditions were natural. For example, Bueche offered expert testimony suggesting this torrent was unique and the flow was affected by human alterations and improvements along the river and the coastline. The City countered that with expert testimony which suggested the river's "behavior" was unchanged over time, and the sandbar and torrent were natural and recurring conditions
 
 
 [7]
 The City contends Bueche is barred from challenging the "interaction between the flow of the river ..." and "material and dramatic" language in the instruction because she did not properly object to these statements during trial. The City suggests Bueche objected to her proposed instructions not being selected, but she never challenged the particular instruction the court chose to use. In her reply brief, Bueche claims she made known her disagreement with the magistrate's interpretation of the law and instructions numerous times: in her summary judgment brief, in her trial briefs, in proposed instructions, and in extensive off-the-record discussions in chambers. In addition, prior to the court's instructing the jury, Bueche's counsel made the following objection: "Your honor, I submitted numerous instructions and I still submit them and would object to the extent that your instructions do not conform with the instructions that were submitted." Trial Tr. at 2321
 This court has recognized an exception to the strictures of Rule 51 when a party has provided the court with unambiguous notice of its dissatisfaction with the court's chosen instructions, and repeated objections would be unavailing or unnecessary thereafter. See Hammer v. Gross, 932 F.2d 842, 847 (9th Cir.), cert. denied, 502 U.S. 980 (1991); United States ex. rel. Reed v. Callahan, 884 F.2d 1180, 1184 (9th Cir.1989), cert. denied, 493 U.S. 1094 (1990). Although offering distinct objections to each disputed instruction prior to the jury's retirement is usually required and is always the preferred course, we find Bueche's objections fall within this exception to the rule.
 
 
 [8]
 Bueche's counsel appears to have conceded in final argument before the jury that construction of the jetty was not a causal factor in the change in the river
 
 
 [9]
 The Buchanan decision, which Bueche cites in her brief, is not to the contrary. In Buchanan, the court found a municipality was not necessarily immune from liability for a surfer's injuries allegedly caused by wave action created by a jetty, dredging, and the deposition of dredged sand. 123 Cal.Rptr. at 341. The court concluded that whether the wave action was natural was a fact question. Id. The municipality's deposition of dredged sand at the accident site resulting in the creation of the steep beach there distinguishes Buchanan from the aforementioned cases. See, e.g., Knight, 6 Cal.Rptr.2d at 880 (limiting Buchanan to its unique facts); Tessier, 268 Cal.Rptr. at 236 (limiting Buchanan to situations involving alterations at the accident site); Morin, 263 Cal.Rptr. at 482 (same); Geffen, 242 Cal.Rptr. at 496 n. 4 (same). This fact also renders Buchanan inapposite to our analysis of the City's alterations to the river and harbor, which again were off-site improvements
 
 
 [10]
 Furthermore, our analysis is unaffected by the fact that the City has the burden of providing the elements of natural condition immunity while Bueche is supposed to bear such a burden as to the voluntary assumption of duty question. Yet the two quoted paragraphs of the voluntary assumption of duty instruction clearly directed the jury to determine whether or not a City employee caused the breach. Their language left no room for the jury to conclude Bueche merely failed to sustain her burden. Thus, the jury necessarily determined that a City employee did not cause the breach. Again, regardless of whether such a directive is otherwise improper, the jury's conclusion dictates that Bueche was not prejudiced by errors in the immunity instruction
 
 
 [11]
 The City claims Bueche waived any objection to the language of the instruction because her counsel actually argued in favor of it prior to its submission to the jury. We agree with Bueche, however, that after her proposed instructions had been rejected by the court, she was forced to defend the court's chosen instruction to counter the City's request for dismissal. Thus, for this reason, and for the reasons set forth in Note 7, supra, we find Bueche did not waive her objections to this instruction
 
 
 [12]
 In a civil trial, a single error in the jury instructions does not mandate reversal if it is "more probably harmless than not." Jenkins v. Whittaker Corp., 785 F.2d 720, 730 (9th Cir.) (citing Haddad v. Lockheed California Corp., 720 F.2d 1454, 1459 (9th Cir.1983)), cert. denied, 479 U.S. 918 (1986)
 
 
 [13]
 After being given the instructions, the jury was asked the following question as part of the special verdict: "Did a City employee owe a duty to Plaintiff to protect her from danger?" The jury answered "No."
 
 
 [14]
 California courts have held that an "active and ongoing" protective service that induces "reasonable public reliance" can create municipal duties to warn of dangers and create municipal liability for accidents resulting from natural conditions if the municipality negligently fails to perform this service. See, e.g., McCauley, 235 Cal.Rptr. at 736 (distinguishing Gonzales v. City of San Diego, 182 Cal.Rptr. 73 (Cal.Ct.App.1982), in which the court found an assumed duty after the municipality had consistently provided lifeguards along a beach area with known, hidden dangers and upon whom the accident victim had come to rely). The presence of warning signs alone, however, which merely warn people to take care when they use public property, does not create this duty. Id. Furthermore, we find no evidence in the record, nor any claim in the briefs, that the City induced Bueche's reliance on some protective service