[Civ. No. 14840. Fourth Dist., Div. One. June 19, 1978.]

SAN DIEGO COUNTY ARCHAEOLOGICAL SOCIETY, INC.,
Plaintiff and Appellant, v.
COMPADRES et al., Defendants and Respondents.

924

---

**COUNSEL**

Bost, Dale, Clark & Fletcher, John C. Bost and Russell J. Clark for Plaintiff and Appellant.

Weil & Fritz, Paul M. Weil and Janice M. Patronite for Defendants and Respondents.

OPINION

BROWN (Gerald), P. J.—San Diego County Archaeological Society, Inc. (Society) appeals the judgment of dismissal after Compadres' demurrer to the first amended complaint as amended was sustained without leave to amend, on the ground plaintiff did not have proper standing, and to allow recovery would be the taking of private property without compensation.

Compadres, a partnership, owns about 20 acres of land in San Diego County on which, Society claims, is located a significant and rare archaeological site, 3,000-7,000 years old. On November 30, 1973, Compadres applied to have the zoning changed from residential (R-1) to commercial and was told to submit a draft environmental impact report (EIR). The draft EIR was presented in September 1974 and noted that the Museum of Man and San Diego State University had said there were "no significant archeological sites on the project" although there were several in the vicinity. Between September 30 and October 2, 1974, Herbert E. Brooke, an agent of Compadres, supervised some grading which coincided with the site in question. Society brought the fact of the grading and the opinions of their experts that the site was moderately or highly significant to the attention of planning staff and county officials. The district attorney investigated the circumstances surrounding the alleged destruction of the site and found no criminal activity.[1] Society sued on the basis Compadres' acts were a willful, fraudulent attempt to destroy the site in order to circumvent provisions of the California Environmental Quality Act (CEQA, Pub. Resources Code § 21000 et seq.) and asked that the artifacts be declared a part of the public trust of which Compadres is the public trustee.

■ Under the public trust doctrine, title to tidelands and lands under navigable waters are held in trust by the state for the benefit of the public. Even where these lands have been conveyed into private ownership, an owner generally holds title subject to public trust restraints. (Eikel & Williams, *Public Trust Doctrines and the California Coastline* (1974) 6 Urb. Law. 519, 520; *Marks* v. *Whitney,* 6 Cal.3d 251, 259 [98 Cal.Rptr. 790, 491 P.2d 374].) The doctrine has been restricted to tidelands,

_____

[1]Penal Code section 622½, for example, proscribes the willful destruction of archaeological objects by anyone other than the owner.

navigable waters and situations where the government or public in general own the property.[2] Society argues it should be extended to archaeological artifacts on private property because the data are intrinsically important to every citizen and should be freely available, are particularly "a gift of nature" and should be preserved, and are such that adaptation to private use is inappropriate. It cites support for this proposition under CEQA where it states:

"The Legislature finds and declares as follows:

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(e) Every citizen has a responsibility to contribute to the preservation and enhancement of the environment."

"The Legislature further finds and declares . . . it is the policy of the State to:

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(b) Take all action necessary to provide the people of this state with . . . historic environmental qualities. . . .

"(c) . . . and preserve for future generations representations of . . . examples of the major periods of California history." (Pub. Resources Code §§ 21000, 21001.)

The Society suggests application of public trust to these artifacts would conform with the Legislature's intent as formerly stated in Public Resources Code section 5097.9. "The Legislature . . . finds and declares . . . California's archaeological, paleontological, and historical heritage is fast disappear-

---

[2]Society claims public trust doctrine has been applied to "many other resources," and mentions the Colorado fossil beds (*Defenders of Florrissant* v. *Park Land Co.* (1969, D.C. Colo.). However, *Florrissant* is an unreported case in which the court did not pass on the issue of obtaining the fossil under public trust. In its reply brief, Society says other jurisdictions have applied the trust doctrine to res other than tidelands (*Gould* v. *Greylock Reservation Commission,* 350 Mass. 410 [215 N.E.2d 114]—natural forest; *Com. v. Nat. Gettysburg B. T. Inc.,* 454 Pa. 193 [311 A.2d 588]—battlefield). However, in *Gould,* governmental agencies owned the land in question, land which was to be used for the people; this case does not deal with imposing a public trust on property which has never been owned by the state; it does not deal with the rights of one private party to dictate how another private party is to use his property. In the *Gettysburg case* the land was privately owned. But the state brought suit under provisions of the Pennsylvania Constitution, not under the public trust doctrine.

ing as a result of public and private land development and . . . the state's total effort to preserve and salvage these precious resources is fragmented and uncoordinated."

However, the public trust doctrine applies only to limited types of real property to which the state holds or held title because it was important the land be available to all. It does not involve private property except where the state has conveyed the land into private hands. It does not cover artifacts located on private property.

CEQA seeks to protect items of significant historic, environmental and aesthetic interest. But, it does this by providing methods of challenging those EIRs which do not properly report environmental circumstances or do not adequately provide mitigation of future significant environmental impacts arising out of a project.[3] (Pub. Resources Code § 21167.) After the agency has approved a project, it can enforce the mitigating conditions by making them requirements for actual development. Here Compadres could be required by the appropriate governmental agency to dig out the midden and remove all archaeological data as mitigation of the environmental impact of its project. However, Society as a private party has no right or authority to dictate to Compadres as a private party how it uses its land. If and when Compadres or any other private owner wants to develop his land and attempts to get the necessary governmental approvals Society can appear at the public hearings, challenge the EIR, or advise the governmental agency if the conditions attached to its development have not been met.

Society analogizes the artifacts to wild animals saying that game is held in public trust for the people, even when it is found on private land. However, wild game, which by definition cannot be confined to private land, has always been deemed to be owned by the people of the state in their sovereign capacity and is not owned privately except as determined by the people (*Ex Parte Maier,* 103 Cal. 476, 483 [37 P. 402]). It is from this common ownership that the public trust arises. Here there is no evidence the state ever owned the land on which the midden is located.

---

[3]Society asks this court: "Assumed [*sic*] for the sake of argument, that all the Appellant alleges is true and the destruction was willful and prior to mitigating measures being laid down, what specific remedy, if any, does the Appellant and the public have under CEQA to compensate them for the deliberate destruction of a natural [*sic*] resource?" None, as long as it is a private property owner destroying his own property.

Since public trust does not apply here we do not consider Society's contention that Compadres as trustee breached its fiduciary duty. Likewise, since there is no cause of action, the question of standing is irrelevant.

The judgment is affirmed.

Cologne, J., and Staniforth, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 31, 1978. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.