[Civ. No. 5649. Fifth Dist. Mar. 9, 1982.]

JEFFREY L. EBEN, Plaintiff and Respondent, v.
THE STATE OF CALIFORNIA, Defendant and Appellant.

**418**

COUNSEL

George Deukmejian, Attorney General, Michael Franchetti, Willard A. Shank and Marvin Goldsmith, Assistant Attorneys General, Seward L. Andrews and Darryl L. Doke, Deputy Attorneys General, for Defendant and Appellant.

Canelo, Hansen & Wilson and Ronald W. Hansen for Plaintiff and Respondent.

OPINION

**FRANSON, Acting P. J.—**

STATEMENT OF THE CASE

This is an appeal from an order granting a new trial pursuant to Code of Civil Procedure section 904.1 after the jury returned a verdict for the defendant State of California (hereinafter State). The trial court specified juror misconduct as the sole reason for a new trial.

We also review the trial court's intermediate order denying the State's motion for a nonsuit pursuant to Code of Civil Procedure section 906.

The State contends it is immune from liability as a matter of law under Government Code section 831.2, which provides: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach." (Added by Stats. 1963, ch. 1681, § 1, p. 3273.) The trial court denied the nonsuit motion because the application of immunity was "a legal question sufficiently important that it should not be resolved at the trial court level."

■ For the reasons to be explained, we hold the State is immune from liability for plaintiff's injuries. Thus, we need not address the State's contentions regarding a new trial.

## The Facts

This action resulted from a tragic waterskiing accident at Millerton Lake on October 2, 1977, rendering plaintiff, then 16 years of age, a quadriplegic. Plaintiff at the time was learning how to single ski using a training method which caused him to be propelled toward the granite shore of the lake. He fell, striking a submerged rock which, as he acknowledged, was "at or immediately near the shoreline" of the lake.[1]

The evidence is uncontradicted concerning the natural condition of the area where plaintiff was injured. Various aerial photographs of the "East Fine Gold Creek" area of the lake, the general locale of the accident, depict a granite embankment which constituted the walls of the San Joaquin River Canyon prior to its inundation by the construction of the Friant Dam.

On the day of the accident, the water level of the lake was 493 feet. The water level fluctuated only 3 feet between September 1 and the accident date, although it has a potential fluctuation of 110 feet.[2] After the accident, a photograph was taken at a water level three inches higher than on the day of the accident. A red buoy had been placed to mark the area where plaintiff fell and to aid Cartwright Aerial Surveys, the firm which took the photographs, to target the accident site. Plaintiff's counsel had previously identified the general area of the accident site by painting the initials "J.E." on an exposed rock on the bank. The general location of the accident was lakeward in an imaginary line from that rock. When the lake receded, the marker buoy placed by the State was in alignment with the so-called "J.E. rock."

A second aerial photograph was taken a month later when the water level at the lake was approximately 11 1/2 feet lower than on the date of the accident. This photograph would have revealed any rock outcrop-

---

[1]Prior to trial the boat driver, Mr. Cox, settled out of the case for his policy limits of $300,000. The action was tried to the jury against the State on the question whether the lake constituted a dangerous condition of public property pursuant to Government Code section 835 et seq. After three weeks of trial, the jury returned a defense verdict on a nine-to-three vote finding the lake was not in a dangerous condition.

[2]The State has no control or responsibility over the water level at Millerton Lake. The United States Department of Interior through its Water Power Resources Services releases the water by opening valves and gates at Friant Dam.

The State's sole function as lessee from the federal government at Millerton Lake is to operate a recreational area upon the surface waters of the reservoir and the land up to 600 feet elevation.

ping extending from the shoreline of the lake which a boater or skier would not anticipate and which was close enough to the surface for plaintiff to have hit when he fell. There is no such rock outcropping.

Mr. King, defendant's consulting civil engineer, testified that in addition to the two aerial photographs taken at different water levels, a photogrametric survey of the vicinity of the accident site was prepared by Cartwright at King's direction. Based on his personal inspection of the exposed area, the aerial photograph taken one month after the date of the accident, and the photogrametric survey of the area performed by Cartwright, it was Mr. King's opinion there were no isolated outcroppings away from shore that plaintiff could have hit. No evidence was introduced to rebut Mr. King's testimony.

King's conclusion is supported by plaintiff's testimony that he fell "at or immediately near the shoreline" and the impeachment testimony of the eyewitness Lee Anne Cox Entell, stating that plaintiff fell approximately six feet from shore.

Thus, the overwhelming evidence shows that plaintiff hit a rock which was appended to the shoreline of the lake.[3]

The State's practice at Millerton Lake was to buoy submerged rocks that were within five feet of the surface and located in traveled areas where a boater would not anticipate any obstruction. Submerged rocks immediately adjacent to the shoreline of the lake are not buoyed because boaters are expected to use common sense when traveling close to shore.

The accident site is in a remote area of the lake, accessible only by boat. The only man-made improvements in the Fine Gold Bay area are (1) permanent "no ski" buoys located at the mouth of the old San Joaquin River channel, preventing waterskiing upstream from that point, (2) a floating restroom located in the vicinity of the mouth of Fine Gold Creek, and (3) a concessionaire's dock located on the north shore of Fine Gold Bay. All of these improvements are remote from the accident site, and plaintiff presented no evidence connecting any of these improvements with the accident.

---

[3]Conceivably plaintiff could have been injured by striking his own ski.

The immunity set forth in Government Code section 831.2 is *absolute*. As stated in the Legislative Committee comment to section 831.2: "This section provides an absolute immunity from liability for injuries resulting from a natural condition of any unimproved public property. Thus, for example, under this section and Section 831.4, the State has an absolute immunity from liability for injuries resulting from natural conditions of a state park area where the only improvements are recreational access roads (as defined in Section 831.4) and hiking, riding, fishing and hunting trails.

"This section and Section 831.4 continue and extend an existing policy adopted by the Legislature in former Government Code Section 54002. It is desirable to permit the members of the public to use public property in its natural condition and to provide trails for hikers and riders and roads for campers into the primitive regions of the State. But the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use. In view of the limited funds available for the acquisition and improvement of property for recreational purposes, it is not unreasonable to expect persons who voluntarily use unimproved public property in its natural condition to assume the risk of injuries arising therefrom as a part of the price to be paid for benefits received."

Although, as Van Alstyne points out, the scope of the immunity is not entirely clear since the statute does not provide a precise standard for determining when, as a result of development activity, public property in its natural state ceases to be "unimproved," it appears that some form of *physical change* in the condition of the property *at the location of the injury* is required to preclude application of the immunity. (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) §3.42 5, p. 256.)

For example, in *Rendak v. State of California* (1971) 18 Cal.App.3d 286 [95 Cal.Rptr. 665], plaintiff's decedent was killed by a landslide at Brighton Beach State Park in Santa Cruz County. Plaintiff appealed from a judgment of nonsuit based on section 831.2 on the theory the presence of an improved parking area, administrative offices, portable lifeguard towers, restroom facilities and concrete fire rings in the vicinity of the accident site rendered the immunity inapplicable to the entire park. The reviewing court affirmed the judgment of nonsuit by emphasizing the immunity statute specifically extends to "*any* natural

condition of *any* . . . beach." The court pointed out that plaintiff's theory would "demolish the immunity as to an entire park area improved in any way other than by access roads or trails, ground already specifically covered by section 831.4. An entrance gate, a parking area adjoining it, or residential provision for park employees would wholly destroy the immunity." *Rendak* noted the plaintiff's "position would be entirely sound if the [statute] had been adopted as originally recommended by the Law Revision Commission (Law Rev. Com., 1963 Recommendation Relating to Sovereign Immunity, p. 852). But the legislative modifications clearly demonstrate a contrary view. We, of course, deal with the statute as adopted, and not with the earlier version suggested to and rejected by the Legislature. It follows that improvement of a portion of a park area does not remove the immunity from the unimproved areas." (*Id.*, at pp. 287-289.)

In *Osgood v. County of Shasta* (1975) 50 Cal.App.3d 586 [123 Cal.Rptr. 442], the decedent was struck and killed by a motor boat while waterskiing. The appellant argued the shoreline of Shasta Lake was an extremely dangerous and hazardous condition due to the physical configuration of the lake, hundreds of coves, inlets, arms and legs which limited the visibility of motor boat operators and waterskiers throughout the over 365 miles of shoreline. Appellant argued section 831.2 only applied to natural lakes and since Shasta is man-made and not natural, the immunity did not apply. (*Id.*, at pp. 587-588.)

The *Osgood* court also rejected appellant's contention on the basis of the legislative history of section 831.2: "The foregoing legislative history makes the legislative intent regarding section 831.2 unmistakably clear. The Legislature rejected a limited immunity inapplicable to artificial lakes in favor of an unconditional immunity applicable to all public lakes, including Shasta Lake. And it goes without saying that the shoreline of the lake is a natural condition thereof within the meaning of the section." (*Id.*, at p. 590.)

Plaintiff seeks to distinguish *Osgood* on the ground the appellant in that case had argued the entire shoreline of Lake Shasta constituted a dangerous and hazardous condition, whereas in the present case, plaintiff only contends the area of plaintiff's accident at the 493 foot elevation was dangerous for waterskiing. We are not persuaded. *Osgood* holds specifically there is an unconditional immunity applicable to all public lakes, natural or man-made. The Shasta Lake shoreline was in the same natural condition as the Millerton Lake shoreline where plain-

tiff was injured. There is no evidence the State had altered the Millerton shoreline anywhere near where plaintiff was injured.

Plaintiff argues it became a factual question for the jury as to whether the accident scene was in a natural condition. The area had been improved for waterskiing by the placement of hazard buoys at various locations along the shore depending on the water level. "No ski" buoys delineated areas that were unsafe for waterskiing. The placement of these hazard buoys created a false sense of security for the users of the area where plaintiff was injured. Furthermore, the area of the accident had been denuded of all trees and vegetation. However, it was unclear whether this had been done by man or by the natural erosion of the water. "More importantly, the water level of the lake was completely man-controlled. The rocks that plaintiff struck only became hazardous because of the water level of the lake. The rocks in and of themselves were not dangerous. Only by combining the water level with the rocks did the area become dangerous."

We respond to the first argument that the placing of warning buoys constitutes an improvement of the property by reiterating that the evidence shows the buoys were located in an area some distance from the accident scene. No evidence suggests the buoys had anything to do with the accident unless we speculate the buoys somehow caused the plaintiff to ski in the area where he was injured. Plaintiff does argue that the warning signs on other parts of the lake caused him to ski in the East Fine Gold Creek area, and that this area was too narrow for skiing. However, even if this were true, plaintiff is faced with the rule that to qualify public property as *improved* so as to take it outside the immunity statute "some form of physical change in the condition of the property *at the location of the injury*, which justifies the conclusion that the public entity is responsible for reasonable risk management in that area, [is] required to preclude application of the immunity." (Van Alstyne, *supra*, § 3.42 5, p. 256; *Rendak* v. *State of California, supra*, 18 Cal.App.3d 286, 288.)

As to plaintiff's argument the placing of warning buoys and the designation of certain areas as unsafe for waterskiing created a false sense of security that skiing was safe where plaintiff was injured, we point out the record is devoid of any evidence that Mr. Cox was in any way misled as to the nature of the area he had selected to teach plaintiff how to ski. Cox was an experienced boater and skier and he obviously knew, as would any reasonable person, of the presence of rocks along the shore-

line. There is no evidence that the State caused the boating public to believe that the East Fine Gold Creek shoreline was rock free. Although the State had a buoy program to mark obstacles occurring where the boating public would not anticipate them and set speed limits in some areas of the lake for benefit of swimmers and fishermen, it cannot be said the State created the illusion it was safe to travel at high speeds within 10, 15 or indeed 30 feet from the shoreline. As the State points out, the site of plaintiff's accident was simply what it appeared to be; "a rocky, unrelentingly hard granite embankment."

Plaintiff's assertion that the accident site was not in its natural condition because it had been denuded of trees and vegetation by the action of man either in the course of constructing the dam or by the erosion of the water over the years, even if it is factually correct, is nevertheless legally redundant. If plaintiff's argument were accepted, it would remove the entire Millerton Lake area from the immunity statute contrary to the holding in *Osgood* v. *County of Shasta, supra*, 50 Cal.App.3d 586, 590.

Furthermore, plaintiff's contention that because the water level of the lake was "man controlled," the accident site was not in a natural state is answered in *County of Sacramento* v. *Superior Court* (1979) 89 Cal. App.3d 215, 218-219 [152 Cal.Rptr. 391] wherein a snag in the American River flowing near a county park was held to be a natural condition of unimproved property, notwithstanding control of water level and flow at Folsom Dam, 15 miles upstream. If we accept the premise that the raising and lowering of the water level at Millerton Lake rendered the changing shoreline an unnatural condition, the entire shoreline would be outside the immunity statute again contrary to the holding in *Osgood* v. *County of Shasta, supra*, that the shoreline of a man-made lake is a "natural" condition within the immunity statute. (50 Cal.App.3d at p. 590.)

Plaintiff's reliance on several other cases is misplaced. *Buchanan* v. *Los Angeles County Flood Control Dist.* (1976) 56 Cal.App.3d 757 [128 Cal.Rptr. 770] was a wrongful death action involving a fatal accident caused by unprecedented releases of flood water from a reservoir into a canal. The canal was protected by a fence-revetment which, the court stressed, gave "the appearance and effect of a fence preventing access to Walnut Creek wash." (*Id.*, at pp. 760-764.) The releasing of water caused the ground beneath the revetment to erode creating a hole into which plaintiff's decedent, a two-year-old child, entered and

drowned. The court held the evidence conclusively showed the condition was an artificial one which took the action out of the immunity statute. (*Id.*, at pp. 764, 767.)

In *Buchanan* v. *City of Newport Beach* (1975) 50 Cal.App.3d 221 [123 Cal.Rptr. 338], plaintiff was paralyzed as a result of a surfing accident. The evidence there showed that the property was "altered radically" by the dredging of a harbor and resultant deposit of sand raising the beach on which plaintiff was surfing 27 feet thereby causing a steep slope from the shoreline to the water. As stated by the court, "[T]his man-made condition of the beach, plus the interaction of the ocean swells against the jetty, [caused] a condition described in the evidence as a 'refraction' of the waves, ... [producing] a dangerous surfing condition." (*Id.*, at p. 224.)

The distinction between the two *Buchanan* cases and the instant action is readily discernible. The improvements along the East Fine Gold Creek shoreline were few in number and remote from the accident site, which was unimproved. No evidence was adduced to link the improvements, causally or otherwise, with the accident.

The bottom line is that plaintiff failed to offer any credible evidence that the accident was caused by striking a rock that should have been buoyed, or that Mr. Cox was somehow misled by the State as to the true nature of the shoreline at Millerton Lake. Because of this failure of proof, the action should have been disposed of as a matter of law by nonsuit based on Government Code section 831.2.

The judgment is reversed. The trial court is directed to enter judgment for the defendant State of California.

Zenovich, J., and LaRue, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 26, 1982. Bird, C. J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.