[No. B077432. Second Dist., Div. Six. Apr. 27, 1995.]

DARRON M. ARROYO, a Minor, etc., et al., Plaintiffs and Appellants, v. THE STATE OF CALIFORNIA, Defendant and Respondent.

## COUNSEL

Cartwright, Slobodin, Bokelman, Borowsky, Wartnick, Moore & Harris, Dennis Kruszynski, Phillip Scott Chan and Jan A. Gruen for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Robert H. Francis and Joel A. Davis, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**GILBERT, J.**—A child walks on a hiking trail in a state park. Suddenly a mountain lion leaps out from the brush and mauls the child. May the child sue the state for his injuries? No.

Government Code section 831.2 protects public entities and employees from liability for injuries caused by natural conditions on unimproved public property. Here we hold that mountain lions are part of the natural condition of the land. The immunity provided by section 831.2 precludes prosecution of an action.

Darron M. Arroyo et al. (Arroyo), appeal from the judgment of dismissal in favor of respondent, the State of California (State), after the trial court sustained the demurrer of the State without leave to amend. We affirm.

### FACTS

On March 12, 1992, nine-year-old Darron Arroyo was mauled by a mountain lion while he was hiking on a marked trail in Gaviota State Park (Gaviota) with his father, Steven Arroyo, and his brother, Justin Arroyo. Steven filed the instant action on behalf of himself, and as guardian ad litem for his sons, Darron and Justin.

Arroyo alleges that the State is liable under the California Tort Claims Act. (See generally, Gov. Code, § 830 et seq.)[1] He pleads that the State knew of the dangerous condition posed by mountain lions at Gaviota. He alleges the State voluntarily assumed a protective duty to the public by providing brochures, verbal information and signs which warn visitors "of various dangers[,]" but which also suggest that Gaviota is a safe outdoor recreational park, "free from significant dangers."

He claims that a legislative moratorium on killing mountain lions created an artificial condition resulting in an overabundance of mountain lions at Gaviota which is foreseeably dangerous. He asserts breach of the statutory duty to eliminate or warn of the danger of mountain lion attacks in Gaviota. He also pleads negligent inspection, negligence, creation of a public nuisance and infliction of emotional distress.[2]

The State demurred to the complaint based on the immunity established by section 831.2. Section 831.2 provides, in pertinent part, that "a public entity . . . is [not] liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach." The trial court sustained the demurrer without leave to amend, and entered a judgment of dismissal. This appeal ensued.

## DISCUSSION

### Standard of Review

■ We independently review the sufficiency of a complaint to state a cause of action. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law. [Citation.]' " (*Ibid.*) Where, as here, the demurrer is sustained without leave to amend, we determine whether there is a reasonable possibility that the complaint could be cured by amendment. If so, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. (*Ibid.*) The burden to prove there is a reasonable possibility to amend is on the plaintiff. (*Ibid.*)

Arroyo raises five issues on appeal concerning the applicability of section 831.2 to this case: 1. Is a wild animal a "natural condition" within the meaning of the statute? 2. Does the State have a specific duty to warn of

---

[1] All further statutory references are to the Government Code unless otherwise stated.
[2] Arroyo does not appeal the dismissal of the nuisance claim.

mountain lions? 3. Does the immunity apply when signs warn only of ticks and snakes and employees state there are no other appreciable dangers? 4. Is the immunity affected by a statutory moratorium on hunting mountain lions? 5. Does Fish and Game Code section 1801, subdivision (g), enacted to alleviate health and safety problems caused by wildlife, affect the duty to warn of mountain lions in state parks?

Section 831.2 is an exception to the general rule that public entities are liable for injuries resulting from substantial, known dangerous conditions of their property. (*Mercer* v. *State of California* (1987) 197 Cal.App.3d 158, 164 [242 Cal.Rptr. 701]; §§ 830, subd. (a), 835.) It provides absolute immunity for public entities against claims for injuries caused by natural conditions of unimproved public property. (*Ibid.*) Section 831.2 was enacted to ensure that public entities will not prohibit public access to recreational areas caused by the burden and expense of defending against personal injury suits and of placing such land in a safe condition. (*Ibid.*) Immunity provisions of the tort claims act generally prevail over all sections imposing liability. (See legis. committee com., 32 West's Ann. Gov. Code (1980 ed.) § 815, pp. 168-169.)

*Is a Wild Animal a "Natural Condition" Under Section 831.2?*

Arroyo questions whether a wild animal constitutes a "natural condition" of the park within the meaning of section 831.2. He argues that only physical conditions of land are contemplated by the statute. The issue presented is one of first impression.

"When questions as to the applicability or interpretation of statutes are presented to this court, . . . the controlling issue is the intent of the Legislature. [Citations.] To ascertain the legislative intent, courts have resorted to many rules of construction." (*Milligan* v. *City of Laguna Beach* (1983) 34 Cal.3d 829, 831 [196 Cal.Rptr. 38, 670 P.2d 1121].) Among them are the comments to the Tort Claims Act which are formally adopted by legislative committees. (*Id.* at pp. 831-832.)

The legislative committee comment to section 831.2 provides, in pertinent part, that "It is desirable to permit the members of the public to use public property in its natural condition and to provide trails for hikers . . . into the primitive regions of the State. But the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use. In view of the limited funds available . . . , it is not unreasonable to expect persons who voluntarily use unimproved public property in its natural

condition to assume the risk of injuries arising therefrom as a part of the price to be paid for benefits received." (See legis. committee com., 32 West's Ann. Gov. Code, *supra*, § 831.2, p. 293.)

Although this statement of legislative intent is not completely dispositive of the issues presented, it indicates the breadth of the immunity intended by the enactment of section 831.2. It is the State's policy to encourage the use of hiking trails in primitive public regions. To implement this policy, section 831.2 relieves the State from the burden of making such areas safe and consequently from defending suits for injuries arising from such use. Section 831.2 requires the public to assume the risk of using hiking trails in state parks.

The immunity of section 831.2 is not restricted to conditions of real property. Section 830, subdivision (c), in pertinent part, defines " 'Property of a public entity' and 'public property' " to include ". . . personal property owned or controlled by the public entity . . . ." Wild animals fall within this definition because they are owned by the State.

In *Ex parte Maier* (1894) 103 Cal. 476, 483 [37 P. 402], our Supreme Court declared that "[t]he wild game within a state belongs to the people in their collective, sovereign capacity; it is not the subject of private ownership, except in so far as the people may elect to make it so . . . ." (*Maier* concerned the illegal sale of deer meat imported from Texas; accord, *Betchart* v. *Department of Fish & Game* (1984) 158 Cal.App.3d 1104, 1106 [205 Cal.Rptr. 135], holding that Department of Fish and Game agents had the right to enter and patrol private open lands to enforce state hunting laws without a warrant because California wildlife is publicly owned.)

California courts deem wild animals to be owned by the people of the state. Wild game cannot be confined to private lands. (See *San Diego County Archaeological Society, Inc.* v. *Compadres* (1978) 81 Cal.App.3d 923, 927 [146 Cal.Rptr. 786]; overruled on other grounds in *Summa Corp.* v. *California* ex rel. *Lands Comm'n* (1984) 466 U.S. 198 [80 L.Ed.2d 237, 104 S.Ct. 1751].) Given the intent of the Legislature in enacting section 831.2, we hold that wild animals are a natural part of the condition of unimproved public property within the meaning of the statute.

### Duty to Warn; Signs and Information Given

■ Arroyo asserts that Gaviota had a duty to place warning signs concerning mountain lions. Section 835 provides, in pertinent part, that "[e]xcept *as provided by statute*, a public entity is liable for injury caused by

a dangerous condition of its property . . . ." (Italics added.) A " 'dangerous condition' means a condition . . . that creates a substantial . . . risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).) Generally, a public entity has a duty to warn of a dangerous condition under sections 830, subdivision (a), and 835.

The absolute immunity created under the specific provisions of section 831.2 is an exception to the general provisions of sections 835 and 830. Immunity provisions of the tort claims act generally prevail over provisions for liability. (See legis. committee com., 32 West's Ann. Gov. Code, *supra*, § 815, pp. 168-169.)

In *McCauley* v. *City of San Diego* (1987) 190 Cal.App.3d 981 [235 Cal.Rptr. 732], an intoxicated man suffered injuries when he fell off a cliff in a public recreational area. The public entity had placed signs warning of false and slippery trails along the cliffs. McCauley contended that the public entity should have been held responsible for failing to warn properly of the dangers there. The *McCauley* court held that the absolute immunity of section 831.2 "precludes the imposition . . . of a duty to warn of dangerous natural conditions on unimproved property." (190 Cal.App.3d at p. 992; see also *Winterburn* v. *City of Pomona* (1986) 186 Cal.App.3d 878, 882 [231 Cal.Rptr. 105].)

Similarly, in *Mercer* v. *State of California*, *supra*, 197 Cal.App.3d at page 166, which involved a fall from an all-terrain vehicle at Pismo State Beach, we held that "liability for failure to warn is inconsonant with the immunity the statute provides. The immunity applies *whether or not the dangerous condition amounted to a hidden trap and whether or not the public entity had knowledge of it.* [Citations.]" (Italics added.)

■ Arroyo opines that Gaviota negligently assumed a voluntary protective service towards his family because its signs, brochures and verbal information generally indicated that except for "various dangers," the park was reasonably safe. Arroyo relies on *Gonzales* v. *City of San Diego* (1982) 130 Cal.App.3d 882 [182 Cal.Rptr. 73] for this proposition. It is distinguishable.

In *Gonzales*, plaintiffs sued the city for the drowning death of their mother caused by the negligent failure of lifeguards to warn of a dangerous riptide condition. The Court of Appeal held that the plaintiffs properly alleged a "hybrid" dangerous condition of the natural riptide combined with the negligent performance of lifeguard services voluntarily provided at the

beach. The point of *Gonzales* is that when a public entity voluntarily provides a particular protective service for particular members of the public, which induces their reliance on the proper performance of that service, section 831.2 does not necessarily provide immunity. (*Mercer* v. *State of California, supra,* 197 Cal.App.3d at pp. 166-167.)

This rule had been strictly limited to the "extremely narrow factual grounds" present in *Gonzales.* (*Mercer* v. *State of California, supra,* 197 Cal.App.3d at p. 167.) The Legislature abrogated those grounds by enacting section 831.21 in 1987. (See *Geffen* v. *County of Los Angeles* (1987) 197 Cal.App.3d 188, 194 [242 Cal.Rptr. 492], rejecting *Gonzales.*) Brochures and signs do not amount to a voluntary assumption of a protective service under section 831.2. (*Mercer, supra,* 197 Cal.App.3d at p. 167; *McCauley* v. *City of San Diego, supra,* 190 Cal.App.3d at p. 990.) Absolute immunity is the rule, "so long as the public entity's conduct does not amount to negligence *in creating or exacerbating the degree of danger normally associated* with a natural condition." (*McCauley, supra,* at pp. 990-991, italics added.)

Here, the trial court did not abuse its discretion in refusing leave to amend to allege that Gaviota had placed signs in the park warning of snakes and ticks. (See *Cantu* v. *Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879 [6 Cal.Rptr.2d 151].) Such signs do not create or exacerbate the degree of danger normally associated with hiking trails. Hiking trails normally are associated with the more primitive and remote areas of parks where one would expect to find diverse wildlife. Public entities are under no obligation to even provide signs warning of such dangers. (See *Mercer* v. *State of California, supra,* 197 Cal.App.3d at p. 166.) The immunity of section 831.2 permits public entities to provide signs without incurring potential liability for failure to notify of every possible danger. (197 Cal.App.3d at p. 170.)

Moreover, there are no allegations here of specific facts showing actual reliance upon the performance or omission of particular mandatory duties to particular people which directly caused injury, nor are there allegations of a special relationship. Neither may respondent be held liable for negligent misrepresentation. (§ 818.8.) There was no abuse of the trial court's discretion in refusing leave to amend. (*Cantu* v. *Resolution Trust Corp., supra,* 4 Cal.App.4th at p. 879.)

*Moratorium on Hunting Mountain Lions; Fish and Game Policy*

■ Arroyo opines that the State created a dangerous, "artificial" condition at Gaviota by enacting a legislative moratorium on hunting mountain lions. The moratorium allowed their population to increase, thereby also

increasing their potential contact with human beings. (Fish & G. Code, § 4800 et seq.) Arroyo also urges that the State bears potential liability here under Fish and Game Code sections 1800 and 1801, subdivision (g), inter alia, because these provisions impose a mandatory duty to use reasonable care to alleviate specific dangers to individuals and to public safety caused by wildlife.

Even assuming that the enactment of the moratorium altered a natural condition, the Legislature intended to restore a more natural state of conditions in the wilderness. The immunity of section 831.2 applies to this issue as a matter of law. (See generally, *Tessier* v. *City of Newport Beach* (1990) 219 Cal.App.3d 310, 314-315 [268 Cal.Rptr. 233], which concerned an injury from diving into a sandbar at Newport Beach. Although the site had been heavily altered, the court held that section 831.2 applied.)

Fish and Game Code section 1801 is only a declaration of policy. It states, in pertinent part, that "It is hereby declared to be the policy of the state to encourage the preservation, conservation, and maintenance of wildlife resources . . . . This policy [includes] the following objectives: [¶] . . . [¶] (g) To alleviate . . . public health or safety problems caused by wildlife to the people of the state . . . in a manner designed to bring the problem within tolerable limits consistent with . . . the objectives stated . . . ."

Subdivisions of section 1801 of the Fish and Game Code discuss maintenance of sufficient populations of all species of wildlife and the habitat necessary to provide for the beneficial use and enjoyment of wildlife by all citizens of the state, including the perpetuation of all species of wildlife. Because Fish and Game Code section 1801 only sets forth a policy, not a mandatory duty, the absolute immunity of section 831.2 applies here. (See *Tirpak* v. *Los Angeles Unified School Dist.* (1986) 187 Cal.App.3d 639, 642-643 [232 Cal.Rptr. 61]; *MacDonald* v. *State of California* (1991) 230 Cal.App.3d 319, 330 [281 Cal.Rptr. 317].)

The judgment is affirmed. Costs to respondent.

Stone (S. J.), P. J., and Yegan, J., concurred.