Filed 2/29/16; pub. & mod. order 3/29/16 (see end of opinion)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| ALANA M., a Minor, etc., et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> STATE OF CALIFORNIA, <br><br>     Defendant and Respondent. | A142240 <br><br> (San Mateo County <br> Super. Ct. No. CIV499080) |

Appellant Alana M. (Alana) was camping with her family in Portola Redwoods State Park when a tree fell on their tent and seriously injured her. Alana sued respondent State of California (State) for damages, and the trial court granted summary judgment in favor of the State based on Government Code[1] section 831.2, which provides no public entity "is liable for an injury caused by a natural condition of any unimproved public property."

Alana does not dispute the tree that caused her injury was a "natural condition," but she contends there is a triable issue of fact as to whether the tree was on "unimproved public property" for purposes of section 831.2. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Portola Redwoods State Park is owned by the State and managed by the Department of Parks and Recreation (Department). The park, established in existing natural forest, consists of about 2,800 wooded acres in the Santa Cruz Mountains in San

---

[1] All further statutory references are to the Government Code.

1

Mateo County. Tanoak trees are indigenous to the area, and the State has not planted any tanoak trees in Portola Redwoods State Park.

The State has built improvements and amenities in Portola Redwoods State Park including roads, parking lots, campsites, hiking trails, restrooms, a visitor center, and various other buildings. These amenities are scattered throughout the park, occupying about 160 acres of the park. Portola Campground, built in the 1940's, is the largest campground in the park with 63 campsites that, together, can accommodate up to 504 people. The campsites of the Portola Campground were installed in and among the trees. The amenities of the campsites consist of a leveled area for a tent, a fire pit, a picnic table with benches, and a small wooden foot locker.

On August 29, 2009, Alana and her parents camped at Campsite 41 of the Portola Campground. Alana was three years old at the time. Around 10:00 p.m., as the family slept in their tent, a tree fell directly on Campsite 41 and struck Alana on her head, resulting in brain damage. The tree was a tanoak growing on a hillside within the Portola Campground at a location 60 feet away from Campsite 41 and about 24 feet from Campsite 42. The nearest man-made object to the tree before it fell was a picnic table at Campsite 42, which was about 30 feet away. The tree was 86 to 96 feet tall, and it snapped and broke approximately three feet from the ground.

Alana, by and through her guardian ad litem, sued the State, asserting claims of premise liability (§ 815.2) and dangerous condition of public property (§ 835).[2] She alleged the tree that fell had identifiable defects including rot, a cavity, and a hatchet wound and it "was overextended with poor taper."[3] Alana alleged the State negligently failed to properly maintain Campsite 41 "and its environs" and negligently failed to warn

---

[2] Initially, Alana's parents asserted a claim of negligent infliction of emotional distress, but they later dismissed their claim.

[3] "Taper" was described as the ratio of the length of a tree to its diameter. The taper of the tree that fell was determined to be 94, and there was evidence that this level of taper would pose a high level of risk for failure.

of the danger of falling trees and, further, the State knew or should have known of the structural defects of the tree that fell and injured her.

The State moved for summary judgment on the ground it was immune from liability under section 831.2 because Alana was injured by a natural condition of unimproved public property. Among other things, the State relied on Alana's concession that the tree that injured her "was an object of nature."

In opposition, Alana argued there was a dispute of fact as to whether the tree that injured her was on improved or unimproved public property. As support for her position, Alana relied on the Department's Tree Hazard Program and the manner in the Department implemented the program in Portola Redwoods State Park. The Tree Hazard Program established a process for identifying and removing live trees with structural problems from developed areas. In Portola Redwood State Park, the Tree Hazard Program applied to all the trees in the Portola Campground, including the tree that fell. Under the program, the campground was subject to biannual tree inspections, and periodically hazardous trees were felled and removed.

Alana cited the following language from a Department operations manual: "Government Code § 831.2 provides immunity to the Department and its employees for any injury caused by a natural condition of any unimproved public property. Thus *the scope of the Tree Hazard Program is solely within the developed areas* of all parks operated by the Department." (Italics added.) Alana argued this evidence showed the State considered the Portola Campground to be a "developed area" and this fact, in turn, raised a triable issue of fact as to whether the entire area of the campground, including the tree that injured her, was improved public property outside the ambit of section 831.2.

The trial court granted summary judgment in favor of the State. Following entry of judgment, Alana filed a timely appeal.

## DISCUSSION

### A.   *Standard of Review*

"In reviewing a defense summary judgment, we apply the traditional three-step analysis used by the trial court, that is, we (1) identify the pleaded issues, (2) determine if

3

the defense has negated an element of the plaintiff's case or established a complete defense, and if and only if so, (3) determine if the plaintiff has raised a triable issue of fact." (*Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 175 (*Meddock*).)

**B.      Natural Condition Immunity**

Section 831.2, commonly referred to as the natural condition immunity, is part of the Government Claims Act (§ 810 et seq.), which " 'is a comprehensive statutory scheme that sets forth the liabilities and immunities of public entities and public employees for torts.' " (*Cordova v. City of Los Angeles* (2015) 61 Cal.4th 1099, 1104–1105; *Milligan v. City of Laguna Beach* (1983) 34 Cal.3d 829, 831–833 (*Milligan*).) Section 831.2 provides in full:  "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach."

Section 831.2 provides for absolute immunity and prevails over the liability provisions of the Government Claims Act.  (*Arroyo v. State of California* (1995) 34 Cal.App.4th 755, 763 (*Arroyo*).)  We begin with a brief discussion of the purpose of the natural condition immunity and cases applying the immunity before addressing Alana's specific argument that the tree that injured her qualifies as "improved" public property outside the purview of section 831.2.

**1.      Legislative Purpose**

"[W]hen the Legislature has stated the purpose of its enactment in unmistakable terms, we must apply the enactment in accordance with the legislative direction, and all other rules of construction must fall by the wayside."  (*Milligan*, *supra*, 34 Cal.3d at p. 831.)  Here, the unmistakable purpose of section 831.2 is "to encourage public entities to open their property for public recreational use" by providing immunity "because 'the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use.' " (*Armenio v. County of San Mateo* (1994) 28 Cal.App.4th 413, 417 [citing legislative comment to section 831.2].)  "[T]he section is designed to address the problem of limited availability of recreational facilities where the public demand is

4

greater than the finite supply of such natural recreational resources." (*McCauley v. City of San Diego* (1987) 190 Cal.App.3d 981, 986 (*McCauley*).)

In addition, the Legislature intended section 831.2 to " 'continue *and extend*' " existing law, and, therefore, the natural condition immunity should not be construed narrowly. (*Fuller v. State of California* (1975) 51 Cal.App.3d 926, 938 (*Fuller*).)

### 2. General Principles from Case Law

The natural condition immunity applies even "where the public entity had knowledge of a dangerous condition which amounted to a hidden trap." (*McCauley*, *supra*, 190 Cal.App.3d at p. 992.) As a consequence, courts have held there is no liability for failure to warn of a known dangerous condition when the danger is a natural condition of unimproved public property. (*Mercer v. State of California* (1987) 197 Cal.App.3d 158, 166 (*Mercer*) [natural condition immunity barred claim of failure to warn driver of off-road vehicle of treacherous conditions of sand dunes]; see *McCauley*, *supra*, at pp. 988–992 [immunity barred claim of failure to adequately warn of dangerous conditions of eroding cliffs]; *Arroyo*, *supra*, 34 Cal.App.4th at pp. 762–764 [immunity barred claim of failure to place warning signs regarding mountain lions].)

Further, "the Legislature did not intend to impose liability ' "where a governmental entity voluntarily assumes a protective service, inducing public reliance, and through the negligent performance of that protective service concurrently causes a member of the public to be victimized by a dangerous, latent, and natural condition." ' " (*Morin v. County of Los Angeles* (1989) 215 Cal.App.3d 184, 191 (*Morin*).) In *Morin*, the court rejected the argument that, by placing a sign on the pier warning against swimming within 200 feet of the pier, the defendant county either induced the plaintiff to believe it was safe to swim beyond the 200-foot area or voluntarily assumed the responsibility for reasonable risk management over the beach near the pier. (*Id*. at p. 193.) In *Bartlett*, the court rejected a similar argument that, by charging admissions fees, providing toilets, and erecting signs that restricted use and set speed limits, the State lost the natural condition immunity for the Pismo Dunes State Vehicular Recreation Area. (*Bartlett v. State of California* (1988) 199 Cal.App.3d 392, 396–398 (*Bartlett*).)

5

The court reasoned: "By requiring that those using unimproved public property assume the risk of injury caused by natural conditions there, the Legislature assured that such areas remain open to the public. [Citations.] The rule proposed by the [plaintiffs] would require the State to choose between immunity or raising revenues by charging users fees. The practical consequence of this Hobson's choice would be the closing to the public of unimproved areas." (*Id*. at p. 398.)

It is also the rule that "improvement of a portion of a park area does not remove the immunity from the unimproved areas." (*Rendak v. State of California* (1971) 18 Cal.App.3d 286, 288 (*Rendak*).) "The reasonableness of this rule is apparent. Otherwise, the immunity as to an entire park area improved in any way would be demolished. [Citation.] This would, in turn, seriously thwart accessibility and enjoyment of public lands by discouraging the construction of such improvements as restrooms, fire rings, camp sites, entrance gates, parking areas and maintenance buildings." (*Mercer*, *supra*, 197 Cal.App.3d at p. 165.)

### 3.    *Improved and Unimproved Public Property*

"The [Government] Claims Act in general, and section 831.2 in particular, fail to either define or establish 'a precise standard for determining when, as the result of developmental activity, public property in its natural state ceases to be 'unimproved.' " (*Keyes v. Santa Clara Valley Water Dist.* (1982) 128 Cal.App.3d 882, 887–888 (*Keyes*).) Courts, however, have required "at least 'some form of [artificial] physical change in the condition of the property at the location of the injury." (*Id*. at p. 888, quoting Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 3.42, p. 256 (Van Alstyne); *Morin*, *supra*, 215 Cal.App.3d at p. 190 [requiring evidence of "improvements or unnatural physical change"]; *Eben v. State of California* (1982) 130 Cal.App.3d 416, 421 (*Eben*).)

In addition, in order to avoid the natural condition immunity, there must be a "causal nexus between the dangerous condition and either human conduct or an artificial improvement." (*Keyes*, *supra*, 128 Cal.App.3d at p. 888.) The immunity applies unless an improvement or human conduct created, contributed to, or exacerbated the degree of,

6

the danger associated with a natural condition. (*Arroyo*, *supra*, 34 Cal.App.4th at p. 764; *Morin*, *supra*, 215 Cal.App.3d at p. 186.)

Finally, because the phrase "of unimproved public property" in section 831.2 modifies the "natural condition" that caused the injury, the relevant issue for determining whether the immunity applies is the character (improved or unimproved) of the property at the location of the natural condition, not at the location of the injury. When the location of the injury is *different* from the location of the natural condition, the character of the location of the injury is not relevant.

This rule is illustrated by *Meddock*, *supra*, 220 Cal.App.4th 170. In that case, the plaintiff was in a paved parking lot within a county park when he was injured by a tree that was growing in an unimproved area next to the parking lot. The plaintiff argued section 831.2 did not apply because he was using improved public property for its intended purpose when he was injured. The county argued the immunity did apply because the injury was caused by a natural condition of unimproved public property. (*Meddock*, *supra*, 220 Cal.App.4th at p. 175.) Siding with the county, the court concluded, "[The plaintiff's] injuries were 'caused by' a 'natural condition' of unimproved property *where the tree grew*, and the fact the tree fell on the improved portion of the public property does not take this case outside the ambit of the [natural condition] immunity." (*Id*. at p. 173, italics added.)

For his position that it was the location of the injury that determined whether the immunity applied, the plaintiff in *Meddock* relied on *Eben*'s statement that, " 'to qualify public property as *improved* so as to take it outside the immunity statute "some form of physical change in the condition of the property *at the location* of the injury . . . [is] required." ' " (*Meddock*, *supra*, 220 Cal.App.4th at p. 178, quoting *Eben*, *supra*, 130 Cal.App.3d at p. 423.) The court was not persuaded: "Contrary to [the plaintiff's] view, this passage does not substitute into the statute a spatial analysis for a causal one; instead, the court was merely rejecting a claim that certain warning buoys, located 'some distance' from a waterskiing accident, meant the public property was improved so as to take it outside the natural condition immunity. (*Eben*, *supra*, at p. 423.) Further,

7

'improvement of a portion of a park area does not remove the immunity from the unimproved areas.' [Citations.] A mountain lion is a natural hazard, even when it attacks someone on improved property. [Citation.] Thus, *the location of the occurrence* [of the injury] *is not material* to the statute." (*Meddock*, *supra*, at pp. 178–179.)

We agree with *Meddock*. We further note both *Keyes* and *Eben* cited Professor Van Alstyne as support for the rule that improved public property requires a physical change " 'at the location of the injury.' " (*Keyes*, *supra*, 128 Cal.App.3d at p. 888; *Eben*, *supra*, 130 Cal.App.3d at p. 421.) But it is evident Van Alstyne did not intend to create a new rule that the character of the location of the injury is relevant to the section 831.2 analysis even in circumstances in which the site of the injury and the location of the natural condition that caused the injury are different. When he made the observation that it appeared "some form of physical change in the condition of the property at the location of the injury . . . may be required to preclude application of the immunity," Van Alstyne, cited *Rendak* as a case illustrating his observation. (Van Alstyne, *supra*, § 3.42, p. 256.) Thus, Van Alstyne intended only to emphasize the rule of *Rendak* that an improvement in one area of a park does not remove the natural condition immunity from the *entire* park. (*Rendak*, *supra*, 18 Cal.App.3d at p. 288.) In *Rendak*, the dangerous condition and the area where the decedent died were generally the same location. (*Rendak*, *supra*, at pp. 287–289.) As a result, Van Alstyne had no reason to distinguish between the location of the natural condition that caused the injury and the location of the injury, which he apparently assumed would be in the same area.

Similarly, in adopting Van Alstyne's observation as a rule, the courts deciding *Keyes* and *Eben* had no reason to distinguish between the location of the natural condition that caused the injury and the location of the injury. After stating the rule, the court in *Keyes* simply held the fact a dam created a recreational reservoir did not render the *entire* reservoir improved property outside the purview of section 831.2. (*Keyes*, *supra*, 128 Cal.App.3d at pp. 887–889.) *Eben* involved a waterskiing accident, and there was no need to distinguish between the location of the accident and the location of the natural condition alleged to have caused the accident (a submerged rock) because the accident

8

occurred at the location of the natural condition.  (*Eben*, *supra*, 130 Cal.App.3d at p. 419.)[4]

## C.    *Analysis*

As we have mentioned, Alana does not dispute the tree that fell and injured her was a natural condition under section 831.2.  It is undisputed Portola Redwoods State Park was established in existing natural forest and tanoaks are indigenous to the park.  There is no evidence of any artificial physical change in the condition of the tree that injured Alana or of the land within 24 feet of the tree.  (*Keyes*, *supra*, 128 Cal.App.3d at p. 888; *Meddock*, *supra*, 220 Cal.App.4th at p. 173.)  Nor is there any evidence suggesting artificial improvements or human conduct contributed to the danger of the tree.  (*Morin*, *supra*, 215 Cal.App.3d at p. 194.)  There is no evidence, for example, that leveling the area of the campsites weakened the tree and made it more likely to fall.  The fact the tree fell on an improved campsite does not take this case outside the ambit of the natural condition immunity.  (*Meddock*, *supra*, at p. 179.)  Accordingly, the evidence establishes the tree that injured Alana was a "natural condition *of any unimproved property*" under section 831.2 as a matter of law, and the natural condition immunity applies.

Alana's arguments that there is a triable issue of fact on the question whether the tree was located on "improved" public property outside the ambit of section 831.2 are unavailing.  She argues there is a causal nexus between the improvements to the campsites and the dangerousness of the tree because "the campsites increased the likelihood that humans would be present when a tree fell in the area and hence increased the likelihood that one of them might be injured."  We cannot accept this argument.  The

---

[4] Moreover, as the State correctly notes, in the cases relied upon by Alana for the proposition the location of the injury is relevant to the section 831.2 analysis, the injury occurred at the alleged dangerous natural condition.  (*Valenzuela v. City of San Diego* (1991) 234 Cal.App.3d 258, 260–261 [rock projecting out over the ocean]; *Tessier v. City of Newport Beach* (1990) 219 Cal.App.3d 310, 312 [concealed sand bar]; *Morin*, *supra*, 215 Cal.App.3d at p. 186 [same]; *Rombalski v. City of Laguna Beach* (1989) 213 Cal.App.3d 842, 846 [tall rock at the beach]; *Bartlett*, *supra*, 199 Cal.App.3d at p. 395 [sand dunes]; *Mercer*, *supra*, 197 Cal.App.3d at p. 162 [same].)

9

public is always more likely to visit public lands with amenities such as parking, informational signs and maps, toilets, lifeguards, fire rings, hiking trails, picnic tables, campsites, and the like, than similar public lands with no amenities. But case law is clear that such amenities do not abrogate the natural condition immunity for areas that are not improved. (E.g., *Rendak*, *supra*, 18 Cal.App.3d at pp. 287–288 [restrooms, fire rings, warning signs]; *Fuller*, *supra*, 51 Cal.App.3d at p. 937 [portable lifeguard towers, restrooms, fire rings]; *Bartlett*, *supra*, 199 Cal.App.3d at pp. 396, 398 [signs, toilets, admission fee, restrictions on use].) If Alana's argument were to prevail, this would "seriously thwart accessibility and enjoyment of public lands by discouraging the construction of such improvements as restrooms, fire rings, *camp sites*, entrance gates, parking areas and maintenance buildings." (*Mercer*, *supra*, 197 Cal.App.3d at p. 165, italics added.)

In *Lupash v. City of Seal Beach* (1999) 75 Cal.App.4th 1428, 1433–1434 (*Lupash*), the court observed: "California's magnificent coastline contains a variety of conditions: soaring cliffs, craggy coves, fog-shrouded inlets, sheltered bays, crashing waves. With natural beauty come natural dangers as well, including the hazards caused by churned-out depressions, inshore trenches, and sandbars. . . . [¶] . . . Despite these risks, since 1987, California courts have consistently held that public entities do *not* owe a general duty of care to the public to provide safe beaches or to warn against concealed dangers caused by natural conditions of the ocean, regardless of whether lifeguard services have been provided. Public policy promotes coastal access, and '[t]he government does not become a guarantor of public safety by providing certain services on unimproved property in its natural condition.' "

Similarly, California's natural forests provide great natural beauty and recreational opportunities along with natural hazards. Alana points to "evidence that all trees eventually fail" and "the simple fact that the tree that fell was 86 feet tall and only 60 feet from Campsite 41" as evidence the tree that injured her was on improved property. This evidence, however, only shows there is risk associated with spending time among the trees of Portola Redwoods State Park; it does not show the tree that fell was on improved

10

property.  We do not believe the State became a guarantor of public safety by providing campsites.

Alana's primary contention is the fact the tree that injured her was subject to the Department's Tree Hazard Program creates a triable issue of fact about whether the tree was on improved public property.  At the same time, she disavows any claim that this fact converted the tree from unimproved to improved property or that the State assumed a duty or otherwise lost or waived the natural condition immunity by applying the Tree Hazard Program to the entire Portola Campground.  She asserts the natural condition immunity would not apply in this case even if the State had no tree inspection program.  Given Alana's disavowals, however, it is difficult to understand how the Tree Hazard Program could be relevant.  She argues the fact the tree was subject to the Tree Hazard Program "leads ineluctably to the inference that the [Department] considered that tree to be standing on improved property within the meaning of section 831.2."  Even if this is so, Alana offers no authority for the proposition a defendant's belief regarding a legal conclusion creates a triable issue on the matter in the absence of any evidence supporting that legal conclusion.  Here, there is no evidence raising a triable issue of fact as to whether (1) there was a physical change in the condition of the property where the tree grew or (2) an improvement or human conduct contributed to the danger of the tree.  The Department's belief that the tree was on improved property is not competent evidence on either of these issues.

Essentially, Alana's position is she was entitled to a campsite in the forest safe from falling trees, but this "is exactly the type of complaint section 831.2 was designed to protect public entities against."  (*Mercer*, *supra*, 197 Cal.App.3d at p. 169.)  Because Alana has failed to raise a triable issue of fact as to whether the tree was on "unimproved public property" for purposes of section 831.2, the natural condition immunity applies in this case as a matter of law.

## DISPOSITION

The judgment is affirmed.  Alana shall pay the State's costs on appeal.

11

                        _____

                        McGuiness, P.J.

We concur:


_____

Siggins, J.


_____

Jenkins, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALANA M., a Minor, etc., et al.,<br><br>      Plaintiffs and Appellants,<br><br>v.<br><br>STATE OF CALIFORNIA,<br><br>      Defendant and Respondent. | A142240<br><br>(San Mateo County<br>Super. Ct. No. CIV499080)<br>**ORDER MODIFYING AND CERTIFYING OPINION FOR PUBLICATION**<br>**[NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the opinion filed herein on February 29, 2016, be modified as follows:

1.    On page 5, line 10 in the third full paragraph, after the words "In *Bartlett*" add the following:

    *v. State of California* (1988) 199 Cal.App.3d 392 (*Bartlett*)

2.    Replace the text beginning with the last sentence of the last paragraph on page 5 with the following:  (*Id.* at pp. 396–398.)

There is no change in the judgment.

The opinion in the above-entitled matter filed on February 29, 2016, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

Dated: _____          _____

                                              McGuiness, P.J.

Alana M. v. State of California

(A142240)

Trial Court:        San Mateo County

Trial Judges:       Hon. Gerald J. Buchwald

Attorneys:          Law Office of Gerald Clausen, Gerald Clausen;

Rouda, Feder, Tietjen & McGuinn, Cynthia McGuinn for Plaintiff

and Appellant.

Kamala D. Harris, Attorney General, Kathleen A. Kenealy, Chief

Assistant Attorney General, Kristin G. Hogue, Senior Assistant

Attorney General, John P. Devine, Supervising Deputy Attorney

General, Harry T. Gower, III, Deputy Attorney General